**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Walter OLIVER, Jr.,
Defendant-Appellant.**

No. 84–5984.

United States Court of Appeals,
Sixth Circuit.

Argued May 7, 1985.

Decided June 28, 1985.

Rehearing Denied Sept. 5, 1985.

Robert Rose (argued), Bartlett, Tenn., for defendant-appellant.

W. Hickman Ewing, Jr., U.S. Atty., Memphis, Tenn., Joe A. Dycus (argued), for plaintiff-appellee.

Before MARTIN, and KRUPANSKY, Circuit Judges, and PECK, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

Defendant Walter Oliver, Jr. (Oliver) appealed his jury conviction on one count of knowingly depositing in the U.S. mails a threat to injure a person, Christine Broadnax (Broadnax) in violation of 18 U.S.C. § 876 and § 2.

The hostility between Broadnax and Oliver began in 1980 when Broadnax, after living with Oliver for approximately seven months, requested that he permanently remove himself from her apartment. Oliver complied, but carried off a number of pieces of personal property which belonged to Broadnax. Broadnax insisted that he return the property and Oliver retaliated by burning her automobile. Oliver was sentenced to jail for this vandalism.

While incarcerated in 1981, Oliver mailed threatening letters to Broadnax.[1] The letters were composed in Oliver's printing or cursive writing style. In 1982, Oliver was charged in a 15-count indictment stemming from the 1981 threats. Oliver pled guilty to two counts of the indictment and the remaining counts were dismissed. He was incarcerated at the Federal Correctional Institution in Memphis (FCI Memphis) as a result of his 1982 guilty plea when he was charged with mailing a threatening letter to Broadnax's former husband in December, 1983. He was convicted of that offense and he initiated this appeal.

Oliver charged that the trial court caused him "extreme prejudice" when it corrected an erroneous jury instruction. The record discloses that prior to the close of the government's proof, the trial judge permitted both attorneys to review the proposed jury instructions. Neither attorney objected to the instructions. In his summation, Oliver's attorney relied upon the jury instructions to advise members of the jury that the court would instruct them that the United States was required to prove that Oliver "caused the communication to be delivered by the Postal Service" as an element of the offense charged. Oliver's counsel urged in his final argument that the letter to which the indictment referred had never been delivered and, therefore, no offense had been committed.

When the court initially charged the jury, it instructed that the United States had the burden to prove beyond a reasonable doubt "First, that the Defendant deposited in any Post Office or authorized depository for mail matter to be sent or delivered by the Postal Service *or cause to be delivered by the Postal Service a communication....*" (emphasis supplied). The court also instructed the jury that it was not necessary for the government to prove that Oliver personally wrote the letter or placed it in the mail *"so long as he is shown to have caused the communication to be delivered by the Postal Service."* (emphasis supplied).

Before the jury commenced its deliberations, the U.S. Attorney advised the court that the above section of the jury instruction was incorrect, as applied to the instant case, because Oliver was not charged with causing the letter to be delivered, since delivery of a threatening communication constituted a separate and distinct offense under 18 U.S.C. § 876. Rather, pursuant to the indictment at bar, Oliver was accused of depositing the letter in the mail for delivery. The trial court advised the attorneys that it would reinstruct the jury to correct the error of law. Oliver's attorney immediately objected by protesting that the proposed procedure was untimely and that he could not reargue to the jury without prejudicing his client's defense since the closing argument had been tailored to the challenged section of the initial jury instruction.

---

1. For example, a letter designated at trial as Exhibit 22B stated that Oliver would turn Memphis upside down to find Broadnax to "destroy" her. Exhibit 22C threatened "you will not live too long 198? Mary Move away. I will not miss next time." In other letters, Oliver threatened Broadnax's son.

When the trial court determined that the jury should be re-instructed, it presented the attorneys the option of rearguing their respective positions in light of the revised instructions or, in the alternative, the court proposed to explain the reason for the modification of the instruction to the jury. Oliver's attorney continued to object to the suggested procedure. The trial judge thereupon proceeded to explain to the jury the inaccuracy in the initial instructions, and articulated a proper instruction to the jury.

In his brief to this court, Oliver charges "that after closing argument and said argument being made and tailored specifically to the charge as provided by the Court to the defense attorney, the appellate's attorney had no way ... to change horses in mid-stream and [thus the procedure utilized] ... was extremely prejudicial to the defendant."

■ A primary reason for requiring the trial court to provide copies of its purposed jury instructions to counsel prior to closing argument, pursuant to Fed.R.Crim.P. 30, is to permit counsel to "effectively plan their arguments to the jury." *United States v. Shirley*, 435 F.2d 1076, 1078 (7th Cir.1970) (per curiam) (*citing United States v. Bass*, 425 F.2d 161, 163 (7th Cir.1970)). In the instant case, defense counsel expressly tailored his closing argument upon the alleged failure of the government to prove a critical element of the crime, i.e. that the letter had in fact been delivered, as directed by the original jury charge. When the court subsequently omitted that element as a prerequisite for conviction, the defense attorney was left with the impossible task of rearguing to the jury points which he had conceded during his first argument.

■ While it is certainly proper for the court to recharge a jury to correct possible misunderstandings which could arise as a result of inadequately defining the elements constituting the crime charged, *United States v. Egenberg*, 441 F.2d 441 (2d Cir.), *cert. denied*, 404 U.S. 994, 92 S.Ct. 530, 30 L.Ed.2d 546 (1971), the substantial prejudice resulting from the recantation in the instant case is more closely analogous to the situation addressed in *Schultz v. Yeager*, 293 F.Supp. 794 (D.N.J. 1967), *aff'd*, 403 F.2d 639, 641 (3rd Cir. 1968), *cert. denied*, 394 U.S. 961, 89 S.Ct. 1309, 22 L.Ed. 562 (1969).

In *Schultz*, the state prosecutor made numerous comments in his closing argument on defendant's failure to testify on his own behalf. The court instructed the jury that defendant's absence as a witness could give rise to an inference that defendant refused to testify because he could not truthfully deny the facts supporting the criminal charges against him. After the jury commenced deliberating, the U.S. Supreme Court issued an opinion wherein it directed that a defendant's failure to testify could not be cited as inferring guilt. The trial judge in *Schultz* recalled the jury and instructed its members to disregard the court's previous statements as to defendant's decision not to testify on his own behalf. The defendant was convicted, but a federal court ultimately granted his petition for habeas corpus, concluding that the corrected instruction was legally insufficient to cure the prejudice which had resulted from the original instruction.

■ In sum, the prejudice to defendant from the erroneous jury instruction in the case at bar is similar to that in *Schultz* because, in both cases, the discovery of the error was so untimely that a curative instruction would not have rendered it harmless.

The case is therefore REVERSED and REMANDED for a new trial.