**Ronald Mark DRAUGHN, Petitioner,**

v.

**John JABE, Respondent.**

**Civ. A. No. 92–CV–70755–DT.**

United States District Court,
E.D. Michigan, S.D.

Sept. 2, 1992.

Ronald M. Draughn, pro se.

Frank J. Kelley, Atty. Gen. by K. Davison Hunter, Habeas Corpus Div., Lansing, Mich., for Jabe.

## MEMORANDUM OPINION
## AND ORDER

GADOLA, District Judge.

Petitioner Ronald Mark Draughn, who is presently confined at the State Prison of Southern Michigan in Jackson, Michigan, has filed a *pro se* application for the writ of habeas corpus under 28 U.S.C. § 2254. On January 14, 1986, a jury in Recorder's Court for the City of Detroit, Michigan, found petitioner guilty of murder in the second degree and possession of a firearm during the commission of a felony. The trial judge sentenced petitioner to life imprisonment for the murder conviction and to a mandatory two-year term of imprisonment for the felony firearm conviction.

The convictions and sentence arose from the following facts as summarized by the Michigan Court of Appeals:

On the evening of August 31, 1985, [petitioner] and George Garrett went to a flat on St. Clair in Detroit. Jeremiah Griffin was already there. [Petitioner] and Griffin began to argue. Griffin had a knife, and at some point, [petitioner] left and returned with a sawed-off shotgun. [Petitioner] tried to get Griffin to go outside, but Griffin refused. [Petitioner] was standing over Griffin, pointing the gun at him, when [petitioner] heard his father call him from the street below. [Petitioner] looked at the window, and Griffin grabbed the barrel of the shotgun. The gun went off. Griffin was shot in the back of his head and died instantly.

*People v. Daughn*, Michigan Court of Appeals No. 92662 (May 7, 1987).

On direct appeal, petitioner claimed that the trial court gave incomplete and misleading instructions on his defense of accident. The Michigan Court of Appeals affirmed his convictions, and the Michigan Supreme Court denied leave to appeal. *People v. Draughn*, Michigan Court of Appeals No. 92662 (May 7, 1987); *People v. Draughn*, Michigan Supreme Court No. 80860 (July 24, 1987).

Subsequently, petitioner raised the pending issues, including the issue that he raised on direct appeal, in a motion for relief from judgment under Subchapter 6.500 of the Michigan Court Rules. The trial court denied the motion. *People v. Draughn*, Recorder's Court No. 85 05297 (October 16, 1990). The Michigan Court of Appeals found no merit in petitioner's delayed application for leave to appeal and denied leave to appeal. *People v. Draughn*, Michigan Court of Appeals No. 133877 (January 29, 1991). The Michigan Supreme Court similarly denied petitioner's delayed application for leave to appeal in a standard order. *People v. Draughn*, Michigan Supreme Court No. 91168 (September 30, 1991).

On February 13, 1992, petitioner filed the pending application for habeas relief. Petitioner has not identified his grounds for relief by number or letter in his brief. The following is a summary of the claims in the order in which they appear in petitioner's brief: (1) incomplete and misleading jury instructions on accidental homicide; (2) in-

complete and misleading jury instructions on involuntary manslaughter; (3) suppression of evidence by the prosecutor; (4) lack of a jury instruction on voluntary manslaughter; (5) untimely instructions on felony firearm; (6) ineffective assistance of counsel; (7) irrelevant and inaccurate information in the presentence report; (8) insufficient evidence to support the murder conviction; (9) inaccurate sentencing guidelines report; and (10) sentence based on behavioral credits. State court remedies concerning the issues raised in the habeas petition have been exhausted. *Anderson v. Harless*, 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

### DISCUSSION

### I. JURY INSTRUCTIONS

Four of the above-enumerated claims concern the trial court's jury instructions. Petitioner objects to the trial court's instructions, or lack thereof, on accidental homicide, involuntary manslaughter, voluntary manslaughter, and felony firearm.

■ When reviewing these claims, the Court is mindful that

[t]he burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal. The question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process,' *Cupp v. Naughten*, 414 U.S. [141], at 147 [94 S.Ct. 396, 400, 38 L.Ed.2d 368] [1973], not merely whether "the instruction is undesirable, erroneous, or even 'universally condemned,' " *id.* at 146, 94 S.Ct. at 400.

*Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736–1737, 52 L.Ed.2d 203 (1977) (footnote omitted). A jury instruction that merely violates state law does not entitle a petitioner to the writ of habeas corpus. *Wood v. Marshall*, 790 F.2d 548,

551 (6th Cir.1986), *cert. denied sub nom. Wood v. McMackin*, 479 U.S. 1036, 107 S.Ct. 889, 93 L.Ed.2d 842 (1987); *Watters v. Hubbard*, 725 F.2d 381, 383 (6th Cir.), *cert. denied*, 469 U.S. 837, 105 S.Ct. 133, 83 L.Ed.2d 74 (1984).

### A. Accidental Homicide

■ Petitioner alleges that the trial court deprived him of his rights to due process of law and a fair trial by giving incomplete and misleading instructions on accidental homicide. Specifically, petitioner contends that the trial judge did not explain the elements of accidental homicide and removed the concept of innocence in excusable homicide by instructing on negligent, not accidental, homicide.

Respondent argues that petitioner is precluded from raising this claim. The Court agrees.

Petitioner raised this claim on direct appeal. The Michigan Court of Appeals noted petitioner's failure to request specific instructions about his defense and his failure to object to the instruction when given the opportunity to do so. The Court of Appeals also ruled on the merits of petitioner's claim. The Michigan Supreme Court then denied leave to appeal. Although petitioner subsequently raised the issue again in his motion for relief from judgment, the trial court declined to rule on the claim because the Court of Appeals had already addressed the issue. The state appellate courts declined to review petitioner's collateral appeal. Thus, the last state court rendering a reasoned judgment on this issue denied relief, in part, because of the procedural default. *See Ylst v. Nunnemaker*, —— U.S. ——, ——, 111 S.Ct. 2590, 2595, 115 L.Ed.2d 706 (1991) (holding that a court must look through unexplained orders to the last reasoned decision); *McBee v. Grant*, 763 F.2d 811, 813 (6th Cir.1985) (holding that the cause and prejudice standard applies when a state court relies on the procedural default, but also discusses the merits). Petitioner therefore is barred from raising this claim on federal habeas review unless he can demonstrate (1) cause for the default and

actual prejudice from the alleged violation of federal law, or (2) that failure to raise the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson,* — U.S. —, —, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991); *Harris v. Reed,* 489 U.S. 255, 262, 109 S.Ct. 1038, 1042, 103 L.Ed.2d 308 (1989).[1]

Petitioner suggests that ineffective assistance of counsel was cause for the procedural default. For the following reasons, the Court finds that petitioner has not established cause or prejudice for his procedural default.

The trial court used an approved criminal jury instruction (CJI 7:1:01, now CJI2d 7.1) for the relatively simple concept of accident. T II at 251.[2] The trial court indicated that petitioner was not guilty of second-degree murder if the jury was not convinced beyond a reasonable doubt that petitioner voluntarily pulled the trigger. *Id.* The Michigan Court of Appeals found that the instruction fairly presented petitioner's defense of accident to the jury. Therefore, defense counsel's failure to suggest a different instruction or to object to the instruction on accidental homicide did not amount to ineffective assistance.

Moreover, petitioner was not prejudiced from the alleged omission of counsel and will not suffer a miscarriage of justice if the Court declines to address this issue. The evidence suggesting an accidental shooting was weak, whereas the evidence of an intentional killing was strong. The Court need not review petitioner's claim because he has not established cause and prejudice for his procedural default.

### B. Involuntary Manslaughter

■ Petitioner next alleges that the trial court deprived him of his right to due process of law and a fair trial by giving incomplete and misleading instructions on involuntary manslaughter. The trial court used CJI 16:4:04 (Involuntary Manslaughter as a Lesser Included Offense of Murder) and CJI 16:4:05 (Gross Negligence). Petitioner contends that the controlling issue at trial was not negligence, but whether the weapon accidentally discharged when it was pointed at the victim. Petitioner therefore argues that the trial court erred by not using CJI 16:4:06 (Involuntary Manslaughter—Death from Firearm Intentionally Aimed without Malice) as requested by the prosecution.

The assistant prosecutor informed the trial judge that he had failed to use CJI 16:4:06 ("aiming without malice") as she had requested. T II at 258. Defense counsel then indicated that he was satisfied with the charge as given. *Id.* Defense counsel said that the manslaughter charge was "entirely appropriate to this case." T II at 259.

Thus, petitioner, through counsel, not only failed to object to omission of the instruction he claims should have been given, but clearly asked not to have the jury so instructed. Under the doctrine of invited error, he is precluded from complaining of the error now. *Leverett v. Spears,* 877 F.2d 921, 924 (11th Cir.1989).

### C. Voluntary Manslaughter

■ Petitioner alleges that the trial court deprived him of due process and a fair trial when it failed to instruct the jury on voluntary manslaughter.

■ Generally, a claim of failure to instruct on lesser included offenses in non-capital cases is not cognizable on habeas review. *Bagby v. Sowders,* 894 F.2d 792, 797 (6th Cir.), *cert. denied,* 496 U.S. 929, 110 S.Ct. 2626, 110 L.Ed.2d 646 (1990); *Prather v. Rees,* 822 F.2d 1418, 1423 (6th Cir.1987). Such claims may be cognizable if the failure to instruct on a lesser included offense was "such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure[.]" *Bagby v. Sowders,* 894 F.2d at 797.

---

**1.** *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989), applies retroactively. *Hill v. McMackin,* 893 F.2d 810, 814 (6th Cir. 1989).

**2.** T refers to the transcript of the trial and the sentence, consisting of two volumes consecutively paginated from 1 to 277.

Although murder and manslaughter share the common element of being intentional killings, the element of provocation distinguishes manslaughter from murder. *People v. Pouncey*, 437 Mich. 382, 388, 471 N.W.2d 346 (1991). "The provocation necessary to mitigate a homicide from murder to manslaughter is that which causes the defendant to act out of passion rather than reason.... In addition, the provocation must be adequate, namely, that which would cause the reasonable person to lose control." *Id.* at 389, 471 N.W.2d 346.

The evidence here suggested that petitioner acted deliberately and not out of provocation. More than one witness testified that petitioner left the flat on St. Clair Street and returned about five (5) or ten (10) minutes later with a gun. T I at 142–143 (George Garrett); T I at 158 (Mary Lee West). Three witnesses tried to discourage petitioner's course of action. T I at 131 (L.C. Alexander); T I at 142–144 (George Garrett); T I at 157 (Mary Lee West). Petitioner resisted attempts to restrain him. T I at 142–145. Nothing in the record indicates that petitioner was provoked to violence or lost control of himself. The testimony suggests instead that there was a "cooling off" period.

Additionally, neither the assistant prosecutor nor petitioner objected when the trial court failed to instruct on voluntary manslaughter. T II at 258, 264. Indeed, an instruction on voluntary manslaughter would have contradicted the prosecution's theory that petitioner's conduct was without excuse and petitioner's theory that the killing was an accident. Therefore, the evidence did not warrant an instruction on voluntary manslaughter, and the trial court did not violate petitioner's constitutional rights by failing to instruct on voluntary manslaughter.

### D. Felony Firearm

Petitioner alleges that the trial court deprived him of due process and a fair trial by recalling the jury and giving an untimely instruction on felony firearm. Petitioner contends that the piecemeal and abstract instruction on felony firearm prejudiced his case.

A trial judge "must instruct the jury on the law relevant to the specific charges." *Browning v. Foltz*, 837 F.2d 276, 380 (6th Cir.1988), *cert. denied*, 488 U.S. 1018, 109 S.Ct. 816, 102 L.Ed.2d 805 (1989). A trial judge may "recharge a jury to correct possible misunderstandings which could arise as a result of inadequately defining the elements constituting the crime charge...." *United States v. Oliver*, 766 F.2d 252, 254 (6th Cir.1985).

The trial judge here failed to give a jury instruction on felony firearm before the jury began deliberating, but the assistant prosecutor informed him of the omission. T II at 258. The trial judge claimed that he had been negligent and that the omission was not intentional. T II at 258, 260. The trial judge then called the jurors into the courtroom, informed them of his error, and proceeded to instruct them on felony firearm. T II at 260.

The trial judge was required to instruct the jury on the elements of felony firearm, and he did so promptly after discovering his error. The Court finds no constitutional error in this procedure.

## II. PROSECUTORIAL MISCONDUCT

Petitioner alleges that the prosecutor engaged in misconduct by making improper comments and by suppressing material evidence. Petitioner claims that the prosecutor's conduct denied him the right to a fair trial under the Fourteenth Amendment.

### A. Improper Comments

Petitioner objects to the following comment of the assistant prosecutor: "Well, unfortunately, ladies and gentlemen, there is no motive because this was a senseless killing, a senseless killing." T II at 233. Secondly, petitioner complains that the assistant prosecutor defined intent as the possession of a weapon by saying, "What is a gun for other than to shoot someone with!" T II at 234. Finally, petitioner complains that the assistant prosecutor referred to three nonexistent convictions at sentencing and spoke of petitioner's release

from a training school five months before the offense for which he was being sentenced.

■ On habeas review, the standard that must be applied when analyzing claims of prosecutorial misconduct is whether the conduct was "so egregious as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher,* 602 F.2d 117, 119 (6th Cir.) *cert. denied,* 444 U.S. 936, 100 S.Ct. 286, 62 L.Ed.2d 196 (1979). The Court must consider the extent to which claimed misconduct tended to mislead the jury or prejudice the petitioner and whether the claimed misconduct was deliberate or accidental. The Court must look to whether the remarks were isolated or extensive. Moreover, instances of misconduct are to be viewed in light of the strength of the competent proof to prove guilt. *Sizemore v. Fletcher,* 921 F.2d 667, 671 (6th Cir.1990) (citing *United States v. Leon,* 534 F.2d 667, 679 (6th Cir.1976)). In deciding whether prosecutorial misconduct mandates reversal, the harmless error standard is to be applied. *See generally Eberhardt v. Bordenkircher,* 605 F.2d 275 (6th Cir.1979).

### 1. *"Senseless killing"*

■ Petitioner alleges that the assistant prosecutor repeatedly conveyed to the jury her personal belief in his guilt by describing the crime as a senseless killing. The assistant prosecutor made this comment in her opening statement and in her rebuttal argument to the jury. T I at 120; T II at 233. In her opening statement, the assistant prosecutor was suggesting that the testimony would show there was no motive for the crime. The testimony that followed was indeed vague concerning the reason for petitioner's argument with the victim and his motive for leaving the flat and returning with a gun. Therefore, the comment was not misleading or prejudicial.

■ In her rebuttal argument, the assistant prosecutor was responding to defense counsel's closing comment that "there is no reason for an accident." T II at 232. The assistant prosecutor's comment was a fair response to defense counsel's claim that accidents do not require

motives. *See Angel v. Overberg,* 682 F.2d 605, 607–608 (6th Cir.1982) (citing *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)).

### 2. *"What is a gun for?"*

■ Petitioner objects to the assistant prosecutor's comment: "What is a gun for other than to shoot someone with?" Petitioner contends that this comment suggested intent was equivalent to possession of a weapon. This comment was made during the rebuttal argument. It apparently was meant to refute defense counsel's argument that the shooting occurred accidentally when the victim grabbed the gun. T II at 231–233. In response, the prosecution seemingly wanted to show petitioner's intent and that the incident was more than a mere accident. The Court concludes that the comment was a fair response to defense counsel's comment.

### 3. *Comments on the Presentence Report*

■ Petitioner says that the assistant prosecutor referred to nonexistent convictions at sentencing and incorrectly stated that he was released from a training school five (5) months before the offense in question. Petitioner claims that he was never found guilty of the charges, was never sent to a training school on the charges, and had been released from the training school for a significantly longer period than five (5) months.

The assistant prosecutor, however, merely recited from the presentence report and did not refer to the charges as convictions. *See* T II at 270. Petitioner then claimed only that one of the charges had been dropped. T II at 270. Furthermore, as explained more fully below in section V.A., the trial judge apparently did not rely on this information when sentencing petitioner. The Court concludes that none of the assistant prosecutor's comments were so extensive or egregious as to render the trial or sentence fundamentally unfair.

### B. Suppression of Evidence

Petitioner alleges that the prosecution suppressed testimony from the evidence technician who found the wooden gun handle at the scene of the crime. Petitioner claims that testimony from the evidence technician would have supported his defense of accident by demonstrating that a struggle occurred.

Under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment...." *Id.* at 87, 83 S.Ct. at 1196–1197. In this case there is no basis to claim the prosecution suppressed evidence. Petitioner himself waived the testimony of two evidence technicians after the trial judge questioned him about the matter. T II at 180–181.

Moreover, the evidence in question was already before the jury. A police officer who reached the scene of the crime shortly after the shooting testified that he observed what appeared to be the wooden handle or stock of a rifle. T I at 168. The police officer also testified that he pointed out the stock to the homicide team that arrived on the scene. *Id.* The Court concludes that the prosecution did not suppress material evidence.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner alleges that he was deprived of his right to the effective assistance of counsel at trial and at sentencing. More specifically, petitioner claims that defense counsel erred by failing to: (1) object to the trial court's instruction on involuntary manslaughter, (2) ask the trial court for an instruction on voluntary manslaughter, (3) notify the trial court of its error regarding accidental homicide, and (4) address the issue of prior convictions at sentencing.

 To establish ineffective assistance of counsel, petitioner must first

show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel

was not functioning as the 'counsel' guaranteed the [petitioner] by the Sixth Amendment. Second, [petitioner] must show that the deficient performance prejudiced the defense. That requires showing that counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Unless petitioner makes both showings, the Court cannot say that his convictions or sentence resulted from a breakdown in the adversary process that rendered the result unreliable. *Id.*

"Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689, 104 S.Ct. at 2065. A reviewing "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 164, 100 L.Ed. 83 (1955)). Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*, 466 U.S. at 694, 104 S.Ct. at 2068.

### A. Instruction on Involuntary Manslaughter

 Petitioner claims that defense counsel erred when he refused to object to the trial court's instruction on involuntary manslaughter. Defense counsel specifically expressed his satisfaction with the stated instruction. T II at 258. He said that an additional instruction on manslaughter would "overload the thing and cause the jury to more likely come in with a guilty verdict." T II at 258–259. This was a reasonable trial strategy.

### B. Instruction on Voluntary Manslaughter

 Petitioner alleges that counsel was ineffective for not requesting a jury instruction on voluntary manslaughter. The

evidence, however, did not warrant an instruction on voluntary manslaughter. *See* Section I.C. above and Section IV below. Furthermore, voluntary manslaughter suggests an intentional killing, and an instruction on an intentional crime would have contradicted petitioner's theory of accident.

### C. Accidental Homicide

■ Petitioner alleges that defense counsel erred by not objecting to the trial court's instruction on accidental homicide. However, as noted in Section I.A., the trial judge used an approved jury instruction and told the jury not to render a guilty verdict unless it was convinced beyond a reasonable doubt that petitioner had acted voluntarily. The instruction, therefore, was adequate to inform the jury of petitioner's defense, and defense counsel was not deficient for failing to object to it.

### D. Presentence Report

■ Finally, petitioner contends that defense counsel was deficient for failing to address and investigate allegedly false convictions mentioned by the assistant prosecutor at sentencing. The record, however, indicates that petitioner advised counsel of only one discrepancy in the presentence report. T II at 270. Defense counsel brought this discrepancy to the court's attention. *Id.* Even if one were to assume that defense counsel was deficient, counsel's performance was not prejudicial. The trial judge apparently did not rely on the contested charges. *See* Section V.A. below.

The Court concludes that defense counsel did not render ineffective assistance.

### IV. SUFFICIENCY OF EVIDENCE

■ Petitioner alleges that there was insufficient evidence to support his conviction for murder in the second degree. Petitioner claims instead that the evidence supported his defense of accident.

■ Petitioner is not entitled to habeas relief if on the record adduced at the trial a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560 (1979); *United States v. Martin,* 920 F.2d 345, 348 (6th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2038, 114 L.Ed.2d 122 (1991). The Court must review the evidence in the light most favorable to the prosecution to determine if each element of the crime was established beyond a reasonable doubt. *Id.* The fact that the evidence was circumstantial does not render it insufficient. *Spalla v. Foltz,* 788 F.2d 400, 402 (6th Cir.), *cert. denied,* 479 U.S. 935, 107 S.Ct. 410, 93 L.Ed.2d 362 (1986). Furthermore, "[i]t is the province of the factfinder ... to weigh the probative value of the evidence and resolve any conflicts in the testimony." *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir.1992); *see also Brown v. Davis,* 752 F.2d 1142, 1147 (6th Cir.1985) (holding that "the jury's resolution of questions of credibility and demeanor ... is entitled to 'special deference.' ").

> The elements of second-degree murder are (1) that a death occurred, (2) that it was caused by the defendant, (3) that the killing was done with malice, and (4) without justification or excuse. Malice is the intention to kill, the intention to do great bodily harm, or the intention to create a high risk of death or great bodily harm with knowledge that such is the probable result. This intent element must be established from circumstances which do not constitute excuse or justification or mitigate the degree of the offense to manslaughter. Malice can be inferred from the facts and circumstances of the killing.

*People v. Porter,* 169 Mich.App. 190, 192–193, 425 N.W.2d 514 (citations omitted), *lv. denied,* 431 Mich. 885 (1988).

There is no doubt that a death occurred. The evidence, as summarized above in Section I.C., pointed to petitioner as the cause of the death. The testimony about petitioner's return to the scene of the argument suggested that he possessed the intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that such would result. Moreover, George Garrett testified that,

when the gun fired, it had been pointed at victim's head. T I at 146.

Petitioner argues by way of excuse that the death was an accident. He relies on George Garrett's testimony that the gun went off when the victim grabbed petitioner's arm. T I at 145–146, 149–150, 152–153. Other testimony, however, suggested that the shooting was not an accident. For example, the forensic pathologist testified that the wound was at the back of the victim's head and that the firing had probably occurred from a distance of more than five (5) to six (6) feet away. T II at 210, 212. The Court concludes that a reasonable juror could have adduced from the evidence the essential elements of second-degree murder beyond a reasonable doubt.

## V. SENTENCE

Three of petitioner's claims pertain to sentencing. First, he alleges that he was sentenced on irrelevant and inaccurate information. Second, petitioner alleges that he was sentenced as though he had committed a crime with premeditation and deliberation. Third, petitioner alleges that the trial judge based his sentence on behavioral credits which could be earned.

### A. Presentence Report

■ Petitioner alleges that his presentence report contained irrelevant and inaccurate information. Specifically, petitioner contends that the presentence report (1) contained charges for which he was never convicted, (2) described an incident that never occurred, and (3) incorrectly mentioned that he had been released from a training school shortly before the offense for which he was tried.

■ A sentence violates due process if it was carelessly or deliberately pronounced on an extensive and materially false foundation which the prisoner had no opportunity to correct. *Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948); *see also United States v. Tucker*, 404 U.S. 443, 447, 92 S.Ct. 589, 591, 30 L.Ed.2d 592 (1972); *United States v. Sammons*, 918 F.2d 592, 603 (6th Cir.1990) (holding that a defendant

must have a meaningful opportunity to rebut contested information at sentencing). Additionally, petitioner must show that the trial judge relied on the allegedly false information. *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir.1984), *cert. denied*, 469 U.S. 1196, 105 S.Ct. 979, 83 L.Ed.2d 981 (1985).

At the sentencing in this case, the assistant prosecutor noted that, in 1983, petitioner was "in Juvenile Court as a minor in possession of a firearm" and later in 1983 was charged with other offenses. T II at 270. The assistant prosecutor also said that petitioner had been committed to a training school in October of 1983 and released five (5) months before the incident for which he was being sentenced. *Id.* Petitioner then informed defense counsel, who, in turn, informed the trial court that one of the assault charges from 1983 had been dropped. *Id.*

Petitioner told the trial judge that he had discussed the presentence report with his attorney. T II at 271. Petitioner declined to say anything further when the trial court gave him the opportunity to do so. T II at 272.

The trial judge appeared to rely on the following factors: a favorable prognosis for rehabilitation; the loss of, and total disregard for, life; and testimony indicating that petitioner left the scene of the argument only to return with a gun. T II at 272–273.

In summary, the assistant prosecutor referred to the charges simply as charges, not as convictions, and defense counsel then corrected the record to show that one of the charges had been dropped. Neither defense counsel nor petitioner, when given the opportunity, made any other comment about alleged inaccuracies in the presentence report. Finally, the trial judge apparently did not rely on the allegedly false information. Petitioner's claim has no merit.

### B. Premeditation and Deliberation

■ Petitioner notes that he was not charged with murder by premeditation or

deliberation (first-degree murder). He claims, however, that his sentencing guidelines were scored as if he had committed a crime with premeditation and deliberation.

A federal court may entertain a petition from a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Wright v. West,* — U.S. ——, ——, 112 S.Ct. 2482, 2486, 120 L.Ed.2d 225 (1992). This Court has no jurisdiction to grant habeas relief to "a person imprisoned under the sentence of a territorial court in a criminal case, unless the sentence exceeds the jurisdiction of that court, or there is no authority to hold him under the sentence." *Ex parte Harding,* 120 U.S. 782, 783–784, 7 S.Ct. 780, 781, 30 L.Ed. 824 (1887).

Although petitioner cites the Fourteenth Amendment to the Constitution in the heading to this claim, his argument is based solely on state law. Consequently, his claim is not cognizable on habeas review. *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 874, 79 L.Ed.2d 29 (1984); *Branan v. Booth,* 861 F.2d 1507, 1508 (11th Cir.1988) (holding that, "federal courts can not review a state's alleged failure to adhere to its own sentencing procedures."); *Thomas v. Foltz,* 654 F.Supp. 105, 106–107 (E.D.Mich.1987) (holding that the petitioner had no state-created interest in having state sentencing guidelines applied rigidly in determining his sentence).

Even if petitioner's claim were cognizable, the record indicates clearly that the trial judge sentenced petitioner on his conviction for second-degree murder, not murder with premeditation and deliberation. *See* T II at 273–274. Moreover, the trial judge sentenced petitioner to a term of confinement that falls within the limits set by statute for murder in the second degree. *See* M.C.L.A. § 750.317; M.S.A. § 28.549; T II at 274.

### C. Disciplinary Credits

■ Petitioner alleges that the trial judge based his sentence on the premise that he (petitioner) would be released within the shortest possible length of time if he exhibited good behavior. The trial judge's comments were as follows:

> Consecutive to [the felony firearm sentence], which is also mandated, it's the sentence of the Court that as to the Murder II charge you be sentenced to the custody of the Michigan Corrections Commission for a period of life. That's the kind of sentence I can give to you because when you will be released will be a matter that is totally within your control, your behavior. If you are rehabilitated, as the clinic seems to say you are, you'll be out in a minimum amount of time.

T II at 274.

In Michigan, "it is generally impermissible to consider the effects of disciplinary credits in sentencing...." *People v. Rushlow,* 179 Mich.App. 172, 180, 445 N.W.2d 222 (1989). However, as noted in the previous subsection of this opinion, the trial court sentenced petitioner within the limits set by law. The trial court's mere failure to abide by its own sentencing procedures is not subject to review. *Haynes v. Butler,* 825 F.2d 921, 924 (5th Cir.1987), *cert. denied,* 484 U.S. 1014, 108 S.Ct. 717, 98 L.Ed.2d 667 (1988).

Moreover, the Supreme Court has held on collateral review of a federal conviction that the Parole Commission ultimately decides whether and when an offender is to be released. *See Warden v. Marrero,* 417 U.S. 653, 659, 94 S.Ct. 2532, 2536, 41 L.Ed.2d 383 (1974). This fact did not undermine the Supreme Court's conclusion in *Marrero* that the trial judge, at the time of sentencing, determines when the offender will become eligible for consideration for parole. *Id.* This Court concludes that petitioner's rights under the federal Constitution were not violated when the trial court said that the date of petitioner's release would be affected by his behavior.

### CONCLUSION

Petitioner's claims have no merit. Accordingly, the Court DENIES the petition for a writ of habeas corpus. The Court also DENIES petitioner's requests of May

5, 1992, and May 12, 1992, for an evidentiary hearing and appointment of counsel.