117 F.3d 1426
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Juan Cesar MENDOZA-MARTINEZ, Defendant-Appellant.
 No. 96-50247.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 9, 1997.
July 8, 1997.
 
 1
 Before: BROWNING and SCHROEDER, Circuit Judges, and RESTANI, Judge**
 
 
 2
 MEMORANDUM*
 
 
 3
 A jury found Juan Cesar Mendoza-Martinez ("appellant" or "Mendoza-Martinez") guilty of one count of illegal reentry after deportation following a felony, pursuant to 8 U.S.C. § 1326(a) and (b)(1).[1] Mendoza-Martinez appeals his conviction on the grounds that: (1) the district court erred by denying his pre-trial motion collaterally attacking the underlying deportation order at the § 1326 proceeding; (2) the district court violated Fed. R.Crim. Proc. 30 by re-instructing the jury on the definition of "national" after closing arguments; and (3) the district court erred by collaterally estopping appellant from raising his derivative citizenship claim at the § 1326 proceeding. We affirm.
 
 
 4
 * A defendant charged under 8 U.S.C. § 1326 may collaterally attack the deportation proceeding, precluding the government from relying on a prior deportation if the deportation proceeding was: (1) so procedurally flawed that it "effectively eliminate[d] the right of the alien to obtain judicial review," United States v. Mendoza-Lopez, 481 U.S. 828, 839 (1987), and (2) that error caused prejudice to the defendant. United States v. Alvarado-Delgado, 98 F.3d 492, 493 (9th Cir.1996), cert. denied, 117 S. Ct. 1096 (1997). Appellant argues that his deportation proceeding was procedurally flawed because the Immigration Judge ("IJ") advised appellant only of his right to appeal to the Board of Immigration Appeals ("BIA") and not of his subsequent right to appeal to a court of law.[2] We find that the proceeding was not flawed and thus do not reach the second element of prejudice.
 
 
 5
 Neither party denies that Mendoza-Martinez had a right to judicial review of the deportation proceeding. The IJ's failure to advise Mendoza-Martinez of his right to appeal to a court of law is not, however, a procedural defect as the regulations governing the IJ's conduct only require that the IJ advise defendant of his right to appeal to the BIA.[3] 8 C.F.R. §§ 242.19(b), 242.21 (1996).
 
 
 6
 Mendoza-Martinez relies on United States v. Prop-Tovar, 975 F.2d 592 (9th Cir.1992) for the contrary proposition that the IJ must advise a potential deportee of the entire appeal process, including the opportunity for an appeal to a court of law. While the court in Proa-Tovar did note that a denial of the right to direct review of the IJ's decision by the BIA and by the courts constitutes a sufficient procedural defect, this statement was in the context of an involuntary waiver of the initial right to appeal which created an implicit involuntary waiver of all subsequent stages of the appeal process. See id. at 593, 595. Thus, the court in Proa-Tovar did not hold that the defendant must be informed of his right to appeal to a court of law as alleged by appellant.
 
 
 7
 Contrary to the cases such as Proa-Tovar which find a procedural defect when the waiver of the initial right to appeal was not knowing, intelligent, and voluntary and thus foreclosed any review of the deportation proceeding, here, the IJ clearly advised Mendoza-Martinez of his right to appeal to the BIA and inquired if he understood that right. See id. at 593-94. After answering affirmatively, Mendoza-Martinez ultimately filed an appeal. Thus, no procedural defect occurred as review of the proceeding was not foreclosed. The government may rely on the prior deportation.
 
 II
 
 8
 Appellant also argues that the court violated Federal Rule of Criminal Procedure 30 by responding to the jury's questions with an additional definition of the term "national" after appellant's closing argument had expressly relied upon the original instruction.[4] We disagree.
 
 
 9
 Appellant relies on United States v. Oliver, 766 F.2d 252 (6th Cir.1985) to support the proposition that the district court's second instruction prejudiced the appellant. Appellant's reliance on Oliver is misplaced. Unlike Oliver, where the court incorrectly instructed the jury on an element not charged, here, the original instruction was not incorrect. See Oliver, 766 F.2d at 253. It was merely ambiguous. When the jury asked questions demonstrating its confusion the trial court did not err in permitting the ambiguity to be clarified. See United States v. Fontenot, 14 F.3d 1364, 1368 (9th Cir.1994).
 
 
 10
 Moreover, any prejudice appellant may have suffered was not established on the record before the district court. Appellant did not request leave to reopen either the proof or the argument. See id. Appellant simply stated in general terms that "the theory of the defense would have been different" and vaguely objected to the "entire proceeding," adding only at oral argument before this court that he specifically would have contested whether the physical deportation occurred. Appellant also implied at oral argument that perhaps he would not have conceded the other elements of the crime. These arguments, however, are insufficient when raised for the first time on appeal and when the decision to leave certain facts unchallenged at trial appears to be not a matter of mutable strategy, but rather the result of the very strong proof of such facts.[5] Moreover, the only potential harm demonstrated on the record resulted from appellant's reliance on his own misinterpretation of the legal meaning of "national" and not from the court's additional instruction. See United States v. Sotelo, 109 F.3d 1446, 1448 (9th Cir.1997) (subjective belief of allegiance insufficient as a matter of law to prove national status).
 
 III
 
 11
 Appellant further argues that the district court erroneously precluded the relitigation of the "derivative citizenship issue" by granting the government's motion for collateral estoppel. Although not clearly stated by appellant, we assume the "derivative citizenship issue" included his challenge to 8 U.S.C. § 1409 as violating the Equal Protection Clause of the Constitution. It is equally unclear if appellant intended to use the "derivative citizenship issue" to contest the legality of the deportation or his status as an alien.[6] For the following reasons, we find that the district court did not err by precluding additional litigation of the derivative citizenship issue.
 
 
 12
 If the derivative citizenship issue was intended to rebut the legality of the deportation, the court did not err in precluding further litigation of this issue. As the lawfulness of the prior deportation is not an element of the offense under § 1326, Mendoza-Martinez was not entitled to have this issue determined by a jury. Alvarado-Delgado, 98 F.3d at 493 (overruling United States v. Ibarra, 3 F.3d 1333, 1334 (9th Cir.1993)).
 
 
 13
 Even if the derivative citizenship issue was intended to rebut the alienage element of the offense under § 1326, the court did not err. Appellant correctly notes that due to the differing standards of proof between the deportation proceeding and the criminal proceeding, a defendant may not be collaterally estopped from attacking his alien status in the criminal proceeding. Sotelo, 109 F.3d at 1449. Appellant, however, never demonstrated that his derivative citizenship argument raised factual questions as opposed to the purely legal question of the statute's constitutionality. Both in arguing against the government's motion for collateral estoppel and following the court's additional jury instruction defining the term national, appellant failed to articulate the factual arguments he would raise as proof of his derivative citizenship. Instead, appellant repeatedly relied on his challenge to the constitutionality of the statute to attack the alienage element of the offense. The court did not err by precluding litigation before the jury of a purely legal issue and by deciding the issue as a matter of law in a pretrial motion.[7] Moreover, as Mendoza-Martinez only appealed the collateral estoppel ruling and not the court's denial of his Fed.R.Crim.P. 29 motion alleging that the government failed to prove alienage, the constitutionality of 8 U.S.C. § 1409 is not before us.
 
 AFFIRMED
 
 
 **
 The Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by the 9th Cir. R. 36-3
 
 
 [1]
 Section 1326 states:
 Reentry of deported alien; criminal penalties for reentry of certain deported aliens
 (a) Subject to subsection (b) of this section, any alien who -
 (1) has been arrested and deported or excluded and deported, and thereafter (2) enters, attempts to enter, or is at any time found in, the United States ...
 shall be fined under title 18, or imprisoned not more than 2 years, or both.
 (b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection -
 (1) whose deportation was subsequent to a conviction for commission of three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony), such alien shall be fined under title 18, imprisoned not more than 10 years, or both ...
 8 U.S.C. §§ 1326(a),(b)(1)(1994).
 
 
 [2]
 We find appellant's argument that his appearance without counsel exacerbated the IJ's alleged error unpersuasive. The IJ clearly explained appellant's right to counsel and offered appellant additional time to consult with an attorney. This does not constitute a procedural defect as appellant knowingly, intelligently, and voluntarily waived his right to counsel
 
 
 [3]
 The BIA's inability to decide a constitutional claim does not convert the IJ's conduct into a procedural defect. Mendoza-Martinez did not raise a constitutional claim before the IJ and thus the IJ had no reason to believe that the only effective appeal would be to a court of law
 
 
 [4]
 The court's original instruction stated that "[t]he term 'national' means a person owing permanent allegiance to a state." The court responded to the jury's questions by sending in a copy of 8 U.S.C. § 1401. Section 1401 includes a definition of "national" based on the requirements for derivative citizenship of illegitimate children with one citizen parent and one alien parent. 8 U.S.C. § 1401
 
 
 [5]
 Appellant never alleged that he would have raised facts relating to the derivative citizenship issue other than those established at the deportation hearing. The facts at the deportation hearing clearly established that Mendoza-Martinez did not qualify for derivative citizenship under 8 U.S.C. § 1401 (1964) because his father did not reside in the United States for five years after the age of fourteen and before appellant's birth. The evidence presented at the deportation hearing established that Mendoza-Martinez was born when his father was only 17
 
 
 [6]
 Appellant fully litigated one theory with respect to alienage by presenting evidence of allegiance to the United States as proof of national, as opposed to alien, status
 
 
 [7]
 The court explicitly stated that the statute was constitutional and that appellant's equal protection argument
 fails whether understood as a challenge to prior deportation proceedings [on collateral attack] as the element of prejudice has not been shown by the failure to apprise him of his right to judicial review of his equal protection claim or as understood as a challenge to the government's ability to prove alienage as an element of the [ § ] 1326 offense.