Filed 7/7/14  P. v. Lupovitz CA4/2

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E055849 |
| v. | (Super.Ct.No. RIF146943) |
| OFER MOSES LUPOVITZ, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  David B. Downing, Judge.  Reversed and remanded.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, William M. Wood and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

1

A grand jury issued a 180-count indictment charging defendant and appellant, Ofer Moses Lupovitz (defendant), and others who are not parties to this appeal, with conspiracy to commit pimping and pandering in violation of Penal Code[1] sections 182, subdivision (a)(1), 266h, and 266i (count 1); pimping in violation of Penal Code section 266h (count 2); pandering in violation of Penal Code section 266i (count 3); filing a false tax return in violation of Revenue and Taxation Code section 19705, subdivision (a)(1) (counts 8-10, 12); failing to file a tax return in violation of Revenue and Taxation Code section 19706 (counts 11 & 13); grand theft in violation of Penal Code section 487, subdivision (a) (counts 27-28); and money laundering in violation of Penal Code section 186.10, subdivision (a) (counts 29-180).[2] Both sides agreed to sever the trial on counts 1, 2, and 3 from the trial on the remaining counts. The parties further agreed if the jury found defendant guilty on counts 2 or 3, defendant would then plead guilty to various other counts, including all the money laundering charges.

Following a lengthy trial, the jury found defendant guilty on counts 1 and 2. Therefore, defendant pled guilty to the other counts, as agreed, and the trial court sentenced him to serve a total term of nine years in state prison.[3] In this appeal from the subsequently entered judgment, defendant raises only one issue—the trial court

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

[2] The indictment also included various enhancements regarding the amount of money stolen and laundered, the details of which are not pertinent to our resolution of the issues defendant raises in this appeal.

[3] The abstract of judgment is incorrect in numerous respects. Because we are reversing the judgment we will not direct the abstract be corrected.

committed reversible error by correcting its erroneous jury instruction on the elements of the crime of pimping after defendant had relied on and argued the incorrect jury instruction in his closing argument. We conclude the trial court violated defendant's state and federal constitutional right to a fair trial. Therefore, we will reverse the judgment.[4]

## FACTS

The facts of the underlying case are not relevant to our resolution of the issue defendant raises in this appeal. In any event, they are set out at length and in great detail in the parties' respective briefs. For our purpose, it is sufficient to note that defendant was a co-owner of Elite Entertainment (Elite), an escort service with offices in various locations, including Palm Springs. Women who worked for Elite signed contracts that said it was illegal for them to engage in sex acts with customers. Secretaries who answered calls for Elite's services were directed to tell callers that Elite provided exotic dancers and nude body rubs. A dancer sent out on a call collected a $200 show fee for an hour of time. That fee belonged to Elite. The dancer's compensation consisted of tips negotiated with the customer.

Suspecting Elite operated as a cover for prostitution, an investigator with the Riverside County Sheriff's Department initiated a sting operation in which undercover police officers posed as clients. The officers conducted between eight and 10 operations in which they called Elite, asked for a girl to be sent to a hotel room, and when the girl

---

[4] Defendant filed a petition for writ of habeas corpus challenging the validity of his guilty plea (case No. E058729), which we ordered considered with this appeal. We will resolve that petition by separate order.

arrived, asked the girl to engage in an act of prostitution. After paying the required fee, the officer would request a sex act, and a price would be negotiated. The officer would use a ruse to avoid actually engaging in sex once the girl was sufficiently involved in the explicit conduct.

Search warrants executed at various locations, including defendant's home and Elite's Palm Springs office, netted business records and bank account information that connected defendant with the operation of the escort service. Several alleged prostitutes and former employees of Elite testified at trial about the operation of the business. Two of those women testified defendant knew that Elite's escorts engaged in sex acts and that defendant received money collected by the escorts for those acts.

In his defense, defendant presented testimony of his former attorney regarding the operation of escort services in general, and the operation of Elite, in particular. In that testimony, the attorney stated that escort services operate as the booking agent for the escorts. For a fee, the escort service advertises and books shows for the escorts, all of whom are independent contractors. Defendant retained the attorney to incorporate the entity under which Elite did business, and to draft various agreements including a partnership agreement in which defendant would be a "silent investor" while the other partner would operate the business. The attorney also drafted the so-called agency agreements that created the independent contractor relationship between Elite and the escorts. Those agreements also stated the women were not allowed to engage in acts of prostitution.

Additional factual and procedural details pertinent to our resolution of the issue raised in this appeal will be recounted below.

## DISCUSSION

### A. Procedural Details

Before closing arguments, the trial court instructed the jury, in order to find defendant guilty of pimping as alleged in count 2, the prosecutor had to prove, among other things, that defendant "knew Arielle Yori, Candis Castro, Tiffany Welch, Carson Bailey, Leanne Bell, Shawna Alexander, Cynthia Rodriguez, Mahalia Pereza, Courtney Hoffman, Rebecca Hernandez, Larenda Lara, Kelly Alderman, *and* Kimberly Smith were prostitutes." (Italics added.) Because the trial court's instruction used the conjunction "and," defense counsel argued in closing that to find defendant guilty of pimping, the evidence had to prove defendant knew all of the named women, "not some, not one, but all of these individuals were prostitutes." Defense counsel argued that a failure of proof as to one of the named women required the jury to find defendant not guilty on the pimping and pandering counts.

The prosecutor also included the above quoted jury instruction in her initial closing argument. She displayed the instruction in a Power Point presentation, and advised the jury that in order for them to find defendant guilty of pimping, the prosecution was required to prove "the defendant knew that all of the[] girls, and what's listed there [referring to the displayed jury instruction] are the women that were talked about in this case, specifically or testified . . . ." Although the prosecutor did not complete the thought, when she discussed the second element of pimping, she stated,

5

"So, in addition to knowing that they were prostitutes, the evidence has to show . . . that the money or the proceeds that the prostitutes earned working for Elite supported the defendant in whole or in part."

After defense counsel's closing argument, the prosecutor realized the apparent error in the jury instruction and requested a conference in chambers. Although that discussion was not reported, the trial court recounted the essential details when later addressing the jury's questions about the pimping and pandering charges. Because the jury acquitted defendant on the pandering charge, we will only recount their question about the pimping jury instruction. In that regard, the jury asked with respect to the pimping charge whether, to be guilty of that crime, defendant had to know all the women listed in the jury instruction were prostitutes.

In discussing with counsel the appropriate response to the jury's question, the trial court noted that the issue "no doubt arose because of the fact that the defense lawyers[5] yesterday argued . . . since the word 'and' is used instead of the word 'or' in naming all the ladies in the instruction, that, therefore, all of the ladies had to be found to be prostitutes . . . ." The trial court added, "And we had a discussion off the record about that. My response was when [the prosecutor] argued, she could clean it up by saying 'any one would be sufficient.' And that's the way it was left."

---

[5] Defendant was represented at trial by two attorneys, both of whom argued during closing. Two deputy district attorneys prosecuted the case.

6

In accordance with that understanding, in her final closing argument, the prosecutor told the jury, "I respectfully, unlike what [defense counsel] told you, I respectfully disagree with his interpretation of the law. The law does not require the prosecution to prove more than one of these girls was a prostitute, and that the defendant knew it and was deriving support from it. It is simply not the state of the law." The jurors apparently recognized the conflict between the attorneys' closing arguments and the jury instruction, as evidenced by their previously noted question to the judge during their deliberations.[6]

In discussing the appropriate response to the jury's question, defense counsel argued the prosecutor should be estopped from asserting that the People had to prove that defendant only knew that one of the identified women was a prostitute because the prosecutor had submitted the pimping jury instruction to the court, she had displayed it to the jury in her Power Point presentation during her closing argument and, as a result, defense counsel had argued that specific instruction during his closing argument. Alternatively, defense counsel asserted the trial court either should grant a mistrial because defendant's right to competent, credible counsel had been violated, or should allow defense counsel to reargue the case, this time relying on the correct jury instruction. Finally, defense counsel argued the trial court should answer the jury's question with a

---

[6] The jury's actual question was, "Pimping—paragraph 1 and 2—Does the defendant have to know that <u>all</u> of the women on the list were prostitutes and that the proceeds from <u>all</u> of the prostitutes supported defendant?"

simple "no." Ultimately, however, the trial court denied all of defendant's requests. The trial court responded to the jury's question, "No. One is sufficient."

After the jury returned their guilty verdicts, defendant moved for a judgment of acquittal and/or new trial. He argued in that motion, as he does in this appeal, because the prosecutor did not object to the incorrect jury instruction[7] and the trial court instructed the jury according to that instruction without objection from the prosecutor, the incorrect jury instruction on pimping became law of the case. Defense counsel also reasserted his ineffective assistance of counsel claim. The trial court denied defendant's motions.

## B. Issue

In this appeal, defendant reasserts his law of the case argument. Law of the case, as defendant raises it in this appeal, is based on cases from jurisdictions other than California, which hold the prosecution, in an appeal, may not for the first time challenge the jury instruction that defines the elements of the crime, even if the instruction added an element that is not included in the statutory definition of the offense. "The law of the case is applied to hold the government to the burden of proving each element of a crime as set out in a jury instruction to which it failed to object, even if the unchallenged jury instruction goes beyond the criminal statute's requirements. [Citation.] In cases to which

_____

[7] The record indicates the trial court proposed the jury instructions and then asked the attorneys to review them. In their discussion of CALCRIM No. 1150, the instruction on the elements of the crime of pimping, the only subject addressed was whether the instruction included all the names of all the women about whom the prosecution had presented evidence at trial.

8

the doctrine of law of the case applies, the evidence must conform to the unchallenged jury instructions to support a conviction. [Citation.] The doctrine of law of the case is an equitable remedy whose purpose is to prevent the government from arguing on appeal a position which it abandoned below. [Citation.]" (*U.S. v. Williams* (10th Cir. 2004) 376 F.3d 1048, 1051; see also *State v. Hickman* (1998) 954 P.2d 900, 901 ["elements in the 'to convict' instruction not objected to become the 'law of the case' which the State must prove beyond a reasonable doubt to prevail. By acquiescing to jury instructions which included venue as a necessary element to convict, even though it really is not an element, the State assumed the burden of proving venue; it however failed to do so"].)

Defendant acknowledges there are no California cases that apply law of the case in this manner. The principle is a species of forfeiture or invited error. However, we will not address the issue because, regardless of what we call it, the principle is not relevant here. Defendant's contrary assertion notwithstanding, the prosecutor objected to the pimping jury instruction during trial, albeit belatedly. Therefore, this case does not involve forfeiture or invited error. The issue in this appeal is whether the trial court erred when it responded to the jury's question, after it had declined to reinstruct the jury on the elements of the crime of pimping and also denied defendant's request to reargue the evidence based on the corrected jury instruction.

## C. Analysis

As previously recounted, when the prosecutor pointed out the error in the pimping jury instruction, the trial court did not correct the instruction and reinstruct the jury. Instead, the court directed the prosecutor to resolve the issue in final closing. As a result, the prosecutor told the jury the law was other than that set out in the jury instruction and argued by defense counsel. The prosecutor argued the law only required her to prove defendant knew one, not all, of the named women was a prostitute and derived income from that prostitute. The trial court, in our view, erred by failing to reinstruct the jury once the prosecutor identified the error in the instruction. It is the trial court's responsibility to instruct the jury on the pertinent law. (See § 1093, subd. (f).) Therefore, the court should have corrected the erroneous pimping jury instruction by instructing the jury according to the correct legal principle.

Because the trial court did not correct the jury instruction, the jurors were left with an instruction framed in the conjunctive and, therefore, incorrect. When they later asked the trial court for direction on the issue, the court was required to clarify the jury's confusion, which in this case meant the trial court was required to correct the error in the jury instruction on pimping. (See *People v. Smithey* (1999) 20 Cal.4th 936, 985; see also *People v. Giardino* (2000) 82 Cal.App.4th 454, 465 [Fourth Dist., Div. Two] ["under section 1138 the trial court must attempt 'to clear up any instructional confusion expressed by the jury'"].) The trial court's response to the jury's question in effect gave the jury a different statement of the law pertinent to the crime of pimping than the one included in its instruction and that defendant had argued in closing.

10

Defendant has a constitutional and statutory right to present a closing argument. (*Herring v. New York* (1975) 422 U.S. 853, 865; § 1093, subd. (e).) As a matter of statutory law, the trial court is to decide which instructions to give before the commencement of argument. (§ 1093.5.) The reason for this rule is to give the parties the opportunity to intelligently and persuasively argue the case to the jury. (*People v. Kronemyer* (1987) 189 Cal.App.3d 314, 341.) "Material modification and departure from agreed upon instructions may deprive a defendant of a fair trial." (*Ibid*.) However, there is no error where a modification is de minimis and it neither changes the thrust of the instruction nor prejudices the defense argument. (*Ibid*.)

Defendant argues he was denied his constitutional right to the effective assistance of counsel and to a fair trial because, in answering the jury's question, the trial court effectively materially modified the jury instruction on the elements of the crime of pimping. Defendant contends, at the very least, the trial court should have granted the request to reopen closing argument, and failure to do so deprived him of his right to a fair trial. We agree.

"To prevent unfair prejudice, if a supplemental instruction introduces new matter for consideration by the jury, the parties should be given an opportunity to argue the theory. [Citations.] 'The Sixth and Fourteenth Amendments to the United States Constitution and article I, section 15 of the California Constitution guarantee a criminal defendant the right to the effective assistance of counsel at all critical stages of the proceedings.' [Citation.] '"To effectuate the constitutional rights to counsel and to due process of law, an accused must . . . have a reasonable opportunity to prepare a defense

11

and respond to the charges." [Citation.]' [Citation.] If supplemental or curative instructions are given by the trial court without granting defense counsel an opportunity to object, and if necessary, offer additional legal argument to respond to the substance of the new instructions, the spirit of section 1093.5 and the defendant's right to a fair trial may be compromised. [Citations.]" (*People v. Ardoin* (2011) 196 Cal.App.4th 102, 129.)

The trial court denied defendant his due process right to a fair trial by in effect reinstructing the jury during their deliberations on the elements of the crime of pimping. Defense counsel had based a significant part of the defense on CALCRIM No. 1150, as given by the trial court and discussed by the prosecutor during her initial closing argument. The trial court then undermined that argument by telling the jury in response to their question they could find defendant guilty based on the acts of only one of the named women. Although defense counsel had also argued defendant's general lack of knowledge that prostitution was occurring, and the lack of evidence to show defendant derived income from such conduct, they did not review the evidence, or lack thereof, with respect to each of the women named in the pimping jury instruction. Under these circumstances, we are not able to say the trial court's modification of CALCRIM No. 1150 was de minimus. Instead, it went to the heart of defendant's closing argument and the credibility of his attorneys. As such, the error requires reversal of the judgment. (See, e.g., *U.S. v. Gaskins* (9th Cir. 1988) 849 F.2d 454, 459 [defense counsel should have been allowed to address new aiding and abetting instruction because "arguments based on convicting a defendant as a principal or convicting a defendant as an aider and

12

abettor are based on two conceptually different theories"]; *U.S. v. Oliver* (6th Cir. 1985) 766 F.2d 252, 254 [during closing argument in prosecution for making threats by U.S. mail, "defense counsel expressly tailored his closing argument upon the alleged failure of the government to prove a critical element of the crime, i.e., that the letter had in fact been delivered, as directed by the original jury charge. When the court subsequently omitted that element as a prerequisite for conviction [saying defendant only had to have deposited the letter for delivery], the defense attorney was left with the impossible task of rearguing to the jury points which he had conceded during his first argument"]; *People v. Sanchez* (1978) 83 Cal.App.3d Supp. 1, 5-7 [during the defense closing argument in a sexual battery trial, the court informed the jury "lack of consent" was not an element of the crime].)

In short, the trial court rendered defendant's trial fundamentally unfair by, in effect, modifying the jury instruction on the elements of the crime of pimping after defendant had relied on the instruction in his closing argument. We cannot say the errors that occurred in this case are harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.) We have no alternative but to reverse the judgment and remand this matter to the trial court for a new trial.

**DISPOSITION**

The judgment is reversed, and the matter is remanded to the trial court for a new trial.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

KING
J.

CODRINGTON
J.

14