681 S.E.2d 23

**The STATE, Respondent,**

v.

**Bradley DYE, Appellant.**

**No. 4557.**

Court of Appeals of South Carolina.

Heard May 13, 2009.

Decided June 4, 2009.

N. Douglas Brannon, of Spartanburg, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Harold M. Coombs, Jr., Office of the Attorney General, of Columbia; and Solicitor Harold W Gowdy, III, of Spartanburg, for Respondent.

GEATHERS, J.

Bradley Dye (Dye) appeals his conviction for second-degree criminal sexual conduct with a minor. Dye claims the circuit

court should have excluded his confession at trial because it was the product of police coercion and the circuit court did not articulate the relevant findings to establish his confession was voluntarily given. We affirm.

## FACTS

On September 8, 2004, Dye's twelve-year-old daughter (Daughter) reported to the police that her father had sexually abused her on several occasions between 2000 and 2003.[1] On that day, Officer Nikki Cantrell (Officer Cantrell) interviewed Daughter, who then gave the police a brief handwritten statement. Soon thereafter, Daughter again met with Officer Cantrell, at which time Daughter recounted her allegations of abuse and signed a statement detailing those allegations.

As a result of Daughter's statements, Officer Cantrell went to Dye's home and asked Dye if he would be willing to come to the police station for an interview. Dye agreed, and on September 30, 2004, Dye met Officer Cantrell at the police station. Officer Cantrell testified that she had not told Dye the purpose or nature of the prospective interview before he came to the police station. Dye arrived at approximately 8 p.m. and followed Officer Cantrell into an interview room.

Prior to questioning Dye, Officer Cantrell read him a pre-interrogation waiver of rights form. Officer Cantrell testified at the *Jackson v. Denno*[2] hearing that after she read him each right, she would ask him if he understood that right, and when he said he did, he would then initial on that line. After he indicated that he understood all of his rights, she then asked him again whether he understood them, and he responded in the affirmative. Officer Cantrell stated that they read the waiver of rights portion of the form together and that Dye indicated by his signature that he understood he was not being threatened or forced into speaking with the police and was doing so by his own free will. Dye also signed the portion of the waiver form that noted Dye could read and write, had a seventh grade education, and agreed to talk with Officer Cantrell "in reference to [Daughter]." She testified Dye

---

**1.** The name of the minor child has been changed to protect her identity.

**2.** *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

never requested clarification as to the meaning of his rights, and based on her experience, he understood what was taking place. She recalled that Dye was calm and cooperative during this time.

Officer Cantrell began the interview by talking with Dye about his family and his two daughters. Dye initially denied having molested Daughter and claimed his ex-wife was lying about the incidents to harass him. In response, Officer Cantrell informed Dye that Daughter had told some of her friends at school and that one of the friends told his ex-wife, who then reported it to the police. Dye told Officer Cantrell he could not have molested Daughter because he had never spent more than five minutes alone with Daughter, but he then contradicted himself by saying the two of them took fishing trips together. Officer Cantrell pointed out this inconsistency and told Dye there were two types of people who molest children: one type that does it on a frequent basis to numerous victims and a second type that usually does it to one person; but either way, these people could get help to keep them from continuing to hurt children. Officer Cantrell testified that Dye then said, "I'm not saying that I did it, but if I did, what would happen to me?" In response, Officer Cantrell told him that he would be arrested, taken to jail, released if he could post bond, and tried at a later date. Officer Cantrell advised Dye that once he was released, he could seek help if that is what he felt he needed.

At this point, Dye confessed to having molested Daughter. Officer Cantrell stated that Dye allowed her to type his confession while he recounted the episodes of abuse to her because he was upset and emotional. When Officer Cantrell asked if there was a reason why he performed all the acts on Daughter but never had her perform an act on him, he started sobbing and shaking and said that his older brother had raped him when he was younger. Officer Cantrell then questioned Dye on whether any abuse occurred with his younger daughter from his current marriage, and Dye said that he had never done anything to her.

Throughout the hour-and-a-half questioning, Officer Cantrell stated she never promised Dye anything, never raised her voice at him, and never threatened Dye in any way. She

also stated only Dye and she were in the interview room during that time. Officer Cantrell denied threatening to remove his younger daughter from his home if Dye did not give her a statement but agreed that his younger daughter was mentioned in reference to his family situation during the interview.

The circuit court found there was no evidence Officer Cantrell threatened to remove Dye's younger daughter if he refused to confess to molesting Daughter. The court ruled that the statement was voluntary on the basis that his confession was given after he was advised of his rights and after Dye stated he understood and wanted to waive those rights. Dye's statements were later admitted into evidence at trial over his objection. A Spartanburg County jury found Dye guilty of second-degree criminal sexual conduct with a minor, and the circuit court sentenced Dye to the maximum penalty of twenty years imprisonment. This appeal followed.

## STANDARD OF REVIEW

In criminal cases, this Court will review errors of law only. *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). This Court is bound by the circuit court's factual findings unless they are clearly erroneous. *State v. Quattlebaum*, 338 S.C. 441, 452, 527 S.E.2d 105, 111 (2000). On review, the circuit court's conclusions on issues of fact as to the voluntariness of a confession will not be disturbed unless so manifestly erroneous as to show an abuse of discretion. *State v. Rochester*, 301 S.C. 196, 200, 391 S.E.2d 244, 247 (1990). This Court does not reevaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the circuit court's ruling is supported by any evidence. *State v. Wilson*, 345 S.C. 1, 6, 545 S.E.2d 827, 829 (2001).

## LAW/ANALYSIS

Dye contends that the circuit court erred in admitting his confession into evidence because it was not freely and voluntarily given. Specifically, Dye argues that the circuit court failed to consider the totality of circumstances in its voluntariness determination because the court articulated no

specific findings regarding Dye's education, experience, background, or conduct. Additionally, Dye contends that his confession was not freely and voluntarily given because it was the product of police coercion. We disagree.

 To determine the voluntariness of a statement, the circuit court must first conduct an evidentiary hearing, outside the presence of the jury, where the State must show the statement was voluntarily made by a preponderance of the evidence. *State v. Miller*, 375 S.C. 370, 379, 652 S.E.2d 444, 448 (Ct.App.2007). During this hearing, the circuit court must examine the totality of circumstances surrounding the statement and determine whether the State has carried its burden of proving the statement was given voluntarily. *Id.* at 383, 652 S.E.2d at 450. Our courts have recognized that the appropriate factors to consider in the totality of circumstances analysis include: background, experience, conduct of the accused, age, length of custody, police misrepresentations, isolation of a minor from his or her parent, threats of violence, and promises of leniency. *State v. Parker*, 381 S.C. 68, 87, 671 S.E.2d 619, 628–29 (Ct.App.2008). If the circuit court finds that the statement was given voluntarily, it is then submitted to the jury, where its voluntariness must be established beyond a reasonable doubt. *State v. Washington*, 296 S.C. 54, 56, 370 S.E.2d 611, 612 (1988). On appeal, the circuit court's decision as to the voluntariness of the statement will not be reversed unless so erroneous as to demonstrate an abuse of discretion. *Miller*, 375 S.C. at 378, 652 S.E.2d at 448.

The circuit court considered the totality of circumstances in its voluntariness determination. While the court may not have specifically articulated all relevant factors, the court did find that Dye's statement to the police was knowingly, intelligibly, and voluntarily made. *See id.* at 382, 652 S.E.2d at 450 ("The trial judge must determine if under the totality of the circumstances a statement was knowingly, intelligibly, and voluntarily made."). Furthermore, a review of the record demonstrates that the State proved by a preponderance of the evidence that Dye's confession was freely and willingly made.

At Officer Cantrell's request, Dye voluntarily came to the police station. Prior to speaking about any allegations of misconduct, Officer Cantrell read Dye his rights, and Dye

acknowledged that he understood them when he initialed his name on the line next to each right.[3] Officer Cantrell testified that she never promised Dye anything in return for making a confession and denied ever threatening or raising her voice at him. Furthermore, Officer Cantrell's statement to Dye that he could get help for his problems if he admitted to the charge was not tantamount to coercion. *See State v. Von Dohlen,* 322 S.C. 234, 245, 471 S.E.2d 689, 695 (1996) (finding fact that interrogating officer knew and was empathetic to defendant was insufficient to render statement involuntary) (citing to *Miller v. Fenton,* 796 F.2d 598, 607–11 (3rd Cir.), which upheld the admissibility of a defendant's statement notwithstanding police's friendly approach, lies concerning evidence, and promises to help the defendant get psychiatric care); *see also State v. Linnen,* 278 S.C. 175, 179, 293 S.E.2d 851, 854 (1982) (holding that even though interrogating officers encouraged defendant to make a statement, their actions were not coercive or threatening).

The circuit court noted that no testimony was presented to show that Officer Cantrell specifically threatened to remove his younger daughter if Dye did not give a confession, and Officer Cantrell adamantly denied even alluding to placing Dye's younger daughter in emergency protective custody if he failed to make a statement. *Cf. State v. Corns,* 310 S.C. 546, 549, 426 S.E.2d 324, 325 (Ct.App.1992) (finding defendant's confession involuntary when interrogating officer admitted that he told defendant that defendant's wife could be arrested and that D.S.S. could take his children if he did not confess). Because no competing testimony was introduced to contradict

---

3. Dye claims his statement was involuntary because he did not know the subject matter of the interrogation prior to signing the waiver of rights form. Even if Dye was unaware that Officer Cantrell would question him about Daughter before he came to the police station, he willingly signed his name after the paragraph that stated: "I waive (give up) my rights as explained above and agree to talk to Officer Cantrell in reference to [Daughter], and any statement that I may make is of my own free will, without fear, threat or promise or favor or reward of any kind." Dye even conceded in his brief and at oral argument that he made a knowing and voluntary waiver of his rights. *See State v. Kennedy,* 325 S.C. 295, 307, 479 S.E.2d 838, 844 (Ct.App. 1996) *aff'd as modified* 333 S.C. 426, 510 S.E.2d 714 (1998) (finding that although defendant stated he did not understand why the officers wanted to talk to him, he never indicated he did not understand his *Miranda* rights).

Officer Cantrell's statements, the circuit court was free to accept Officer Cantrell's version of events in making its voluntariness determination. *See Miller,* 375 S.C. at 387, 652 S.E.2d at 453 (finding that in a *Jackson v. Denno* hearing, the circuit court has the opportunity to listen to the testimony, assess the demeanor and credibility of all witnesses, and weigh the evidence accordingly).

Moreover, the conditions surrounding Dye's confession do not indicate his statements were induced by an oppressive environment. Dye was present at the police station for approximately an hour and a half before signing his confession, which is not excessive under the circumstances. *Cf. Von Dohlen,* 322 S.C. at 245, 471 S.E.2d at 696 (finding three-hour interrogation did not render statement involuntary based on totality of circumstances surrounding defendant's confession). Officer Cantrell stated Dye's general demeanor was calm and cooperative, except in the instances when he became emotional as he recounted details of prior abuse. In addition, when Dye confessed, he was not in a police-dominated atmosphere as only Officer Cantrell was present in the room. *See State v. Kirton,* 381 S.C. 7, 39, 671 S.E.2d 107, 123 (Ct.App.2008) (stating that *Miranda* rights are meant to protect the privilege against self-incrimination during interrogation of a suspect in a police-dominated atmosphere).

Finally, even though the circuit court did not specifically acknowledge that Dye had only a seventh-grade education, the State presented this evidence to the circuit court by way of the waiver of rights form. Based on Officer Cantrell's testimony regarding Dye's understanding of his rights and willingness to waive them, we find his lack of education did not hinder his ability to comprehend his rights in light of the attendant circumstances. Consequently, we find the totality of circumstances surrounding Dye's confession establishes that the circuit court did not abuse its discretion in finding his statements were voluntarily given and thus admissible at trial.

## CONCLUSION

Based on the foregoing, the circuit court's decision is **AFFIRMED.**

HUFF and PIEPER, JJ., concur.