795 S.E.2d 171

**The STATE, Respondent,**

v.

**Devin JOHNSON, Appellant.**

**Appellate Case No. 2014-000766**
**Opinion No. 5456**

Court of Appeals of South Carolina.

Heard September 8, 2016
Filed November 16, 2016
Rehearing Denied January 6, 2017

Appellate Defender Susan Barber Hackett, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Senior Assistant Attorney General W. Edgar Salter, III, all of Columbia; and Solicitor Scarlett Anne Wilson, of Charleston, for Respondent.

GEATHERS, J.:

Devin Johnson appeals his convictions for murder and possession of a weapon during the commission of a violent crime, arguing the trial court erred in (1) admitting text messages and historical cell service location information obtained from his cellular service provider by a search warrant, (2) admitting his statement to a police officer, (3) instructing the jury concerning "the hand of one is the hand of all" because the evidence did not support the instruction, and (4) rendering the trial fundamentally unfair because the timing of the hand of one instruction prevented Appellant from addressing the theory in his closing argument. We reverse.

## FACTS/PROCEDURAL HISTORY

In June 2011, two males entered the courtyard breezeway of Georgetown Apartments in Charleston and shot and killed Akeem Smalls (Victim). At the time of the crime, Charmaine Johnson, Appellant's sister, whom he visited regularly, lived in Georgetown Apartments. Victim was Charmaine's boyfriend. At some point prior to the shooting, Appellant had loaned Victim $420.00, and Victim refused to pay him back.

Two days after the murder, officers interrogated Appellant regarding the crime. During the interrogation, Appellant initially denied being in Charleston at the time of the crime; however, he eventually admitted to being at the scene of the crime with another individual identified as "Creep" around the time the crime occurred. Subsequently, a magistrate issued the search warrant at issue in this case, and officers proceeded to obtain Appellant's cell phone records, including his historical cell site location information. Thereafter, a grand jury indicted Appellant for murder and possession of a weapon during the commission of a violent crime, and he proceeded to trial.

At trial, Tenika Elmore testified that at the time of the crime, she and Appellant lived together in Orangeburg. She stated she worked in North Charleston and Appellant would occasionally drive her to work in her car. Elmore owned a blue 2008 Toyota Camry that was missing a rear passenger-side hubcap. On the day of the crime, Appellant dropped her off at work in the afternoon and picked her up at 11:15 that evening. Appellant and Elmore stopped at a gas station in Summerville on the way back to Orangeburg from Charleston. Based on the video surveillance from the gas station and Elmore's testimony, Appellant had dreadlocks and wore a white tee shirt and dark blue jeans on the evening of the crime.

Investigator David Osborne testified officers were interested in one portion of the video surveillance from Georgetown Apartments, which showed a blue Toyota Camry backing into a parking spot with two men exiting the vehicle and walking toward Building C. Investigator Osborne opined backing into a parking space indicated "someone trying to get out in a hurry." He testified the two individuals walked toward the scene of the murder, which occurred outside of the camera's

view, ran back to the car a few seconds later, and fled the complex. He explained the vehicle depicted in the surveillance video was consistent with the color, make, and model of Elmore's car, and the vehicle in the surveillance video and Elmore's car were missing a rear passenger hubcap. According to Investigator Osborne, the driver of the car wore a white tank top and black pants. The individuals in that car were the only two individuals of interest on the video surveillance because everyone else appeared to be "just normally walking around their apartment."

The jury convicted Appellant as indicted, and the trial court sentenced him to concurrent sentences of thirty-six years' imprisonment for murder and five years' imprisonment for possession of a firearm. This appeal followed.

## ISSUES ON APPEAL

1. Did the trial court err in finding the magistrate had probable cause to issue the search warrant for Appellant's cell phone?

2. Did the trial court err in admitting Appellant's statement to investigators?

3. Did the trial court err in charging "the hand of one is the hand of all" because the evidence did not support the instruction?

4. Did the timing of the "the hand of one is the hand of all" jury charge render the trial fundamentally unfair?

## LAW/ANALYSIS

Because we find Appellant's fourth issue dispositive, it is the only issue we will address.[1] Appellant argues that in crafting his closing argument, he relied on the trial court's assurance that it would not instruct the jury on "the hand of one is the hand of all." He contends the court's subsequent reversal of its earlier ruling and charging "the hand of one is the hand of all" rendered the trial fundamentally unfair. We agree.

---

1. *See State v. Crisp*, 362 S.C. 412, 420, 608 S.E.2d 429, 434 (2005) (holding appellate courts need not address remaining issues when the resolution of a prior issue is dispositive).

After the defense rested, the State requested the "the hand of one is the hand of all" jury charge because it "ha[d not] been able to identify a co-defendant." The court denied the request, stating it did not "buy" the State's rationale that the evidence showed two individuals were involved in the crime. The court stated, "The whole testimony in this case is [Appellant was] the shooter." Further, the court stated,

> There's got to be some evidence that somebody else other than—there's no evidence of anything that either one of them shot, to be candid. There's evidence that [Victim] was shot. But if you take [Appellant's] statements, his inconsistent statements, which the jury can consider, and his possibly being the person driving the car, pull all of those together, there's probably substantial circumstantial evidence to support a verdict, but there is no evidence to support that he was a—that someone else shot, other than him if he shot at all. So, thank you, I decline to give that.

Thereafter, the following exchange occurred between Appellant and the trial court:

> THE COURT: All right. I assume you object to that being charged?
>
> [APPELLANT]: Yes, sir.
>
> THE COURT: Well, I think, a review of the record, there's not any evidence to support that charge at all.

Subsequently, after a lunch break, the following occurred between the State and the trial court:

> [THE STATE]: They haven't raised—there's one quick issue. I'm concerned that—[Appellant] can let me know if he believes I'm overthinking i[t]. When we had the charge conference[,] he knows that that charge conference could be reopened, specifically. You know, that that charge conference would be reopened specifically to the hand of one charge?
>
> . . . .
>
> THE COURT: Let me tell you something. I thought about it at lunch. You know what that says to me? 'Judge, I don't give [sic] feel good about my case.'
>
> [THE STATE]: Well, Judge, I—

THE COURT: No, I'm sorry, because you could have gone with that theory from the get-go, and you haven't done that.

[THE STATE]: Okay.

THE COURT: That's just bootstrapping, man. And you've presented this case, "I've got my shooter. I let this guy go." But listen, if there's evidence of that—the reason I'm not charging that is I find that there is absolutely no evidence to warrant it. I don't know what the evidence may be after he testifies.[2]

Thereafter, in his closing arguments, defense counsel argued, "He didn't see a murder. He didn't participate in a murder. He wasn't there." Defense counsel further argued Appellant lied when he told officers he was at Georgetown Apartments when the crime occurred. He also argued Appellant lied when he stated he drove Elmore's car to the crime scene because "that car [in the surveillance video] is not [Elmore's] car." Thereafter, the trial court instructed the jury without including an instruction on accomplice liability.

After an hour of deliberations, the jury asked, "[I]f the other individual pulled the trigger, can the defendant still be guilty?" Because of this question, the trial court apologized to the State, determining it was required to charge "the hand of one is the hand of all" and that its prior decision not to give the charge was incorrect. Appellant asked the court to respond to the question by either stating "the answer to that is no in this case" or "you have all the evidence and you have all the law." Instead, in order to cure the error, the trial court offered Appellant the opportunity to reargue his closing argument before the court recharged the jury. The trial court considered declaring a mistrial because of the error but stated it first wanted to find a case that said a trial court cannot give a supplemental jury charge after deliberations began and offer additional closing arguments to cure the error.

Appellant rejected the trial court's offer, asserting that rearguing the charge would "waive" the issue on appeal. Further, Appellant objected to the charge and moved for a mistrial, arguing (1) he would have addressed the charge in closing had he known it would become an issue, (2) giving the

---

2. Appellant did not testify at trial.

charge in response to a question after deliberations began was a judicial comment on the facts, (3) the charge would "constitute a premature deliberation after the fact because [the jury was] not supposed to deliberate until the case ha[d] been submitted, which include[d the trial court's] charge," and (4) the charge would require Appellant to "shift[ ] theories" in front of the jury because during his closing argument, he contended he was not at the scene, and after the additional jury charge, he would have had to argue he was merely present. Thereafter, the trial court charged the jury on "the hand of one is the hand of all" and mere presence. After the jury returned to the jury room, Appellant argued the evidence did not support the charge. The trial court responded as follows:

> And in response of the rationale, my reasoning for it, how the evidence does, because the evidence as presented supports—we had two leaving the car, walking towards where the shooting occurred, the shooting, and two people come back, running, leaving, and identified by eyewitnesses as two people. A person is shot, cartridges are found, all of that is as to who was the shooter. For those reasons, I did it and I understand your objections.

We conclude the trial court's decision to give the charge after confirming it would not give the charge rendered the trial fundamentally unfair. The circumstances of this case are similar to those in *State v. Jones*, 343 S.C. 562, 541 S.E.2d 813 (2001). During the charge conference in *Jones*, the trial court indicated it planned to charge that reasonable doubt is a doubt that would cause a reasonable person to hesitate to act. *Id.* at 576, 541 S.E.2d at 820. Defense counsel specifically incorporated the "hesitate to act" language in his closing argument, telling the jury that "when you go through this testimony and this evidence in this case, you're gonna hesitate." *Id.* at 576–77, 541 S.E.2d at 820–21. Subsequently, the trial court, upon request from the State, removed the "hesitate to act" language from the jury charge. *Id.* at 577, 541 S.E.2d at 821. On appeal, our supreme court held, "Appellant reasonably relied upon the [court's] representation that [it] intended to give that charge to the jury. The decision to alter the charge, after the argument, was fundamentally unfair." *Id.* at 578, 541 S.E.2d at 821.

We recognize this case can be distinguished from *Jones* in one regard. Here, Appellant rejected the trial court's offer to reargue his closing argument in order to correct the error.[3] While this is a novel issue in South Carolina—allowing counsel to present additional closing arguments after the jury has already begun deliberating in order to cure a defective jury charge—it is not necessarily prohibited. Nonetheless, we conclude South Carolina jurisprudence does not favor rearguing after deliberation has begun because of its potential invasion into the province of the jury. Moreover, if we were to decide this case under *Jones*, the decision to give the charge after the jury began deliberating was prejudicial because here, as in *Jones*, Appellant crafted his closing argument in reliance on the trial court's adamancy that it would not charge "the hand of one is the hand of all" during the charge conference because, at that time, the court believed the evidence did not support the charge. *See id.* at 578, 541 S.E.2d at 821 ("Appellant reasonably relied upon the [court's] representation that [it] intended to give that charge to the jury. The decision to alter the charge, after the argument, was fundamentally unfair."). We agree with Appellant's contention that to reargue his closing would have required him to "shift theories" because during his closing argument, he contended he was not at the scene, and after the additional jury charge, he would have had to argue he was merely present. We further agree with Appellant that this shifting of theories could have potentially diminished his credibility with the jury. *See id.* ("Appellant's attorney told the jury that the [court] would charge them reasonable doubt meant a doubt which would cause a reasonable person to 'hesitate to act.' The effect of the [court's] after the fact decision to excise the hesitate to act language from his charge was to diminish appellant's attorney's credibility in the eyes of the jury."). Furthermore, the colloquies between the trial court and the parties and the court's suggestion of a mistrial reveal the court recognized the magnitude of its decision with regard to its initial refusal to give the charge and its subsequent decision to give the charge.

Courts in other jurisdictions have reached the same conclusion. In *People v. Clark*, 453 Mich. 572, 556 N.W.2d 820, 822–

---

**3.** The opinion in *Jones* does not suggest the trial court offered an opportunity for additional closing arguments.

23 (1996), a trial court—after the parties made their respective closing arguments—changed its mind regarding jury charges and decided it would not give a specific modified instruction. Defense counsel objected, arguing he had relied on the modified instruction in formulating his closing argument. *Id.* at 823. The trial court, "acknowledging the predicament that had been created, offered the defense the opportunity to reopen the closing argument." *Id.* "Defense counsel declined this invitation, stating that in his opinion[,] the modified instruction was not a misstatement of the law and that to reargue would only accentuate issues that should not be accentuated and create credibility problems with the jury." *Id.* He also argued "he could not prepare a new argument on such short notice." *Id.*

The Supreme Court of Michigan affirmed the court of appeals' reversal of the defendant's conviction, holding:

> We agree with the Court of Appeals that reargument would be inappropriate. This would have accentuated the issue and impaired defense counsel's credibility with the jury. Because this error affected the jury's result, it is prejudicial error requiring reversal because it affirmatively calls into question the validity of the jury's decision.

*Id.* at 827.

> The court cautioned:

> Under no circumstances do we conclude, advocate, or imply that a trial [court] has a duty to instruct the jury incorrectly, nor do we say that the [court] erred by refusing to give the erroneous instruction.

> The prejudice to the defendant in this case was incurred by virtue of defense counsel's argument in reliance on one instruction and the [court's] subsequent decision to instruct the jury on a different one. This misled defense counsel in formulating his closing argument.

*Id.*; *see also United States v. Oliver*, 766 F.2d 252, 254 (6th Cir. 1985) ("When the trial court determined that the jury should be re-instructed, it presented the attorneys the option of rearguing their respective positions in light of the revised instructions or, in the alternative, the court proposed to explain the reason for the modification of the instruction to the jury .... [D]efense counsel expressly tailored his closing argument upon the alleged failure of the government to prove

a critical element of the crime ... as directed by the original jury charge. When the court subsequently omitted that element as a prerequisite for conviction, the defense attorney was left with the impossible task of rearguing to the jury points which he had conceded during his first argument."); *Cruz v. State*, 407 Md. 202, 963 A.2d 1184, 1192 (2009) ("We are not persuaded that a supplemental closing argument would have cured the problem created by the court's eleventh hour insertion of this new theory of culpability."); *Murray v. State*, 857 S.W.2d 806, 811 (Tex. Crim. App. 1993) ("Without notice that the court would submit this instruction, Murray's counsel could not fulfill his function of intelligently arguing the defenses actually available to Murray. Further, the court's repudiation of the very argument it allowed caused the trial to lose its character as an adversary proceeding, greatly jeopardizing Murray's ability to receive a fair trial. Murray would have been better off without closing argument."); *Moore v. State*, 848 S.W.2d 920, 922–23 (Tex. Crim. App. 1993) (holding defense counsel relied on the trial court's original charge, stating, "Counsel made a legitimate argument that was based entirely on the trial [court's] written instructions, and it is one the jury may have found persuasive if it followed those instructions, as it was bound by oath to do," and the trial court's offer of five more minutes of additional argument did not cure the error).

Yet, we note other courts have required the trial court to allow counsel to reargue should the court introduce new law after closing arguments. In *People v. Ardoin*, 196 Cal.App.4th 102, 130 Cal.Rptr.3d 1, 24 (2011), the court stated, "To prevent unfair prejudice, if a supplemental instruction introduces new matter for consideration by the jury, the parties should be given an opportunity to argue the theory." Further, the court held, "If supplemental or curative instructions are given by the trial court without granting defense counsel an opportunity to object, and if necessary, offer additional legal argument to respond to the substance of the new instructions, the spirit of [a state statute] and the defendant's right to a fair trial may be compromised." *Id.*; *see also United States v. Horton*, 921 F.2d 540, 547 (4th Cir. 1990) (holding that when "a new theory is presented to the jury in a supplemental instruction after closing argument, the court generally should give counsel time

for additional argument"); *United States v. Gaskins,* 849 F.2d 454, 460 (9th Cir. 1988) ("[I]nstructing the jury that it could convict [the defendant] as an aider or abettor without allowing additional argument to address this theory requires reversal of both counts.").

However, some courts, although not requiring additional closing arguments, found either no error when the trial court offered additional arguments after a supplemental jury instruction or no prejudice to the appellant when the appellant failed to request the opportunity for additional closing arguments after the supplemental jury instruction. *See State v. Bircher,* 446 Md. 458, 132 A.3d 292, 302, 304–06 (2016) (holding the trial court did not err in determining a supplemental instruction on transferred intent was proper and "offering additional closing time" for the parties to give additional closing arguments); *Commonwealth v. Melvin,* 103 A.3d 1, 50 (Pa. Super. Ct. 2014) (noting the appellant "arguably waived this claim by failing to request the opportunity to offer additional argument to the jury to address the supplemental charge after being informed that it would be given"); *State v. Calvin,* 176 Wash.App. 1, 316 P.3d 496, 507 (2013) (finding no prejudice when "[d]efense counsel was given the opportunity to reargue the case but declined"), *review granted in part, cause remanded,* 183 Wash.2d 1013, 353 P.3d 640 (2015); *see also United States v. Welbeck,* 145 F.3d 493, 497 (2d Cir. 1998) ("The initiative for the supplemental instruction came from the jury itself, precluding the possibility that the timing of the charge was unfairly suggestive on the court's part. Nor is there any indication that [the defendant] was unfairly prejudiced by the late instruction.").

Although appellate courts in some jurisdictions have determined the trial court's decision to allow counsel to reargue an issue after the trial court changed its jury charge does not require an automatic reversal, they have also acknowledged the decision, while not forbidden, "should be made only with extreme caution" and will result in a mistrial if the defendant suffered prejudice as a result. *See Clark,* 556 N.W.2d at 826 ("A change in jury instructions at the eleventh hour, as occurred here, should be made only with extreme caution."); *see also United States v. Scheffer,* 463 F.2d 567, 574 (5th Cir. 1972) ("[A] trial [court's] failure to inform counsel of an

598

instruction which is subsequently given to the jury, or omitted from their consideration, does not require that the conviction be reversed in every case. Rather, the test is whether the instruction, considered as a whole, was fundamentally prejudicial to the rights of the defendant."); *Clark*, 556 N.W.2d at 823 ("Reargument would only be appropriate if it would not prejudice the defendant.").

Based on the foregoing, we find the trial court's decision was fundamentally prejudicial to Appellant because Appellant crafted his closing argument in reliance on the trial court's adamancy that it would not charge "the hand of one is the hand of all" during the charge conference. *See Jones*, 343 S.C. at 578, 541 S.E.2d at 821 ("Appellant reasonably relied upon the [court's] representation that [it] intended to give that charge to the jury. The decision to alter the charge, after the argument, was fundamentally unfair."); *see also Oliver*, 766 F.2d at 254 (stating that although the trial court presented the attorneys with the option of rearguing their respective positions after the court determined the jury should be reinstructed, "defense counsel expressly tailored his closing argument upon the alleged failure of the government to prove a critical element of the crime ... as directed by the original jury charge" and omitting that element as a prerequisite for conviction left the defense attorney "with the impossible task of rearguing to the jury points which he had conceded during his first argument"); *Moore*, 848 S.W.2d at 922–23 (holding defense counsel relied on the trial court's original charge, stating, "Counsel made a legitimate argument that was based entirely on the trial [court's] written instructions, and it is one the jury may have found persuasive if it followed those instructions, as it was bound by oath to do," and the trial court's offer of five more minutes of additional argument did not cure the error). Accordingly, we reverse the trial court's decision to provide the additional jury charge after trial counsel relied on the court's statement that it would not give the charge.

**REVERSED.**

WILLIAMS and THOMAS, JJ., concur.