**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

The State, Respondent,

v.

Devin Jamel Johnson, Appellant.

Appellate Case No. 2019-000938

———————

Appeal From Charleston County
R. Markley Dennis, Jr., Circuit Court Judge

———————

Unpublished Opinion No. 2025-UP-059
Heard April 22, 2022 – Filed February 19, 2025
Withdrawn, Substituted and Refiled July 30, 2025
Withdrawn, Substituted and Refiled October 1, 2025

———————

**AFFIRMED**

———————

Appellate Defender Joanna Katherine Delany, of
Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy
Attorney General Donald J. Zelenka, Senior Assistant
Deputy Attorney General Melody Jane Brown, and
William Joseph Maye, all of Columbia; and Solicitor
Scarlett Anne Wilson, of Charleston, all for Respondent.

———————

**PER CURIAM:** Devin Jamel Johnson appeals his conviction of murder.  Johnson has twice been convicted of the murder of Akeem Smalls.  This court reversed his first conviction.  *State v. Johnson* (*Johnson I*), 418 S.C. 587, 795 S.E.2d 171 (Ct. App. 2016).   Johnson was retried and again convicted of murder.  Johnson appealed his second conviction to this court.  *State v. Johnson* (*Johnson II*), 438 S.C. 110, 882 S.E.2d 190 (Ct. App. 2022), *rev'd and remanded*, 444 S.C. 442, 908 S.E.2d 102 (2024).  On appeal, Johnson argued the trial court erred in admitting into evidence his statement[1] to law enforcement, removing a juror and replacing him with an alternate juror midtrial, and instructing the jury on accomplice liability.  *Id.* at 114, 882 S.E.2d at 192.  Following oral argument, this court reversed that conviction, finding the trial court had erred in instructing the jury on accomplice liability.  *Id.* at 128-30, 882 S.E.2d at 199-200.  This court did not address Johnson's remaining arguments because our decision on the accomplice liability jury instruction was dispositive.  *Id.* at 130 n.13, 882 S.E.2d at 200 n.13.  The State filed a petition for writ of certiorari, which our supreme court granted.  The supreme court reversed this court's decision and found the trial court had not erred in instructing the jury on accomplice liability.  *State v. Johnson* (*Johnson III*), 444 S.C. 442, 908 S.E.2d 102 (2024).  The supreme court remanded the case to this court to decide Johnson's remaining issues on appeal.[2]  *Id.* at 453, 908 S.E.2d at 108.  We now consider those two issues.  We affirm.

1.  The trial court did not abuse its discretion by denying Johnson's motion to suppress his statement.  After reviewing the totality of the circumstances, we find Johnson voluntarily made the statement.  "The test of admissibility of a statement is voluntariness."  *State v. Franklin*, 299 S.C. 133, 137, 382 S.E.2d 911, 913 (1989).  "[T]he State must show the statement was voluntarily made by a preponderance of the evidence."  *State v. Dye*, 384 S.C. 42, 47, 681 S.E.2d 23, 26 (Ct. App. 2009).  "A preponderance of the evidence is evidence [that] convinces the fact finder as to its truth."  *Pascoe v. Wilson*, 416 S.C. 628, 640, 788 S.E.2d 686, 693 (2016).

"[T]he question of voluntariness presents a mixed question of law and fact."  *State v. Miller* (*Miller I*), 441 S.C. 106, 119, 893 S.E.2d 306, 313 (2023).  Accordingly, this court "review[s] the trial court's factual findings regarding voluntariness for any evidentiary support.  However, the ultimate legal conclusion—whether, based

---

[1] Johnson's statement consists of his interrogation by members of the Charleston Police Department on June 10 through 11, 2011.

[2] On remand now, we decide this case without oral argument pursuant to Rule 215, SCACR.

on those facts, a statement was voluntarily made—is a question of law subject to de novo review." *Id.*

A statement is involuntary when the circumstances surrounding it overbore the suspect's will. *State v. Breeze*, 379 S.C. 538, 544, 665 S.E.2d 247, 250 (Ct. App. 2008). "The trial [court]'s determination of the voluntariness of a statement must be made on the basis of the totality of the circumstances . . . ." *State v. Collins* (*Collins I*), 442 S.C. 444, 455, 900 S.E.2d 426, 432 (2024) (quoting *State v. Saltz*, 346 S.C. 114, 136, 551 S.E.2d 240, 252 (2001)). Those circumstances include "the details of the interrogation," *Miller I*, 441 S.C. at 120, 893 S.E.2d at 313, and "the background, experience, and conduct of the accused." *Collins I*, 442 S.C. at 455, 900 S.E.2d at 432 (quoting *Saltz*, 346 S.C. at 136, 551 S.E.2d at 252). Courts may consider the impact of multiple factors, including: (1) "the youth and maturity of the accused;" (2) "the accused's lack of education or low intelligence;" (3) "the failure to advise the accused of his constitutional rights, particularly the rights to remain silent and have counsel present;" (4) "the presence of a written waiver signed by the accused regarding his constitutional rights;" (5) "the physical condition of the accused, including whether the accused was intoxicated at the time of the interrogation;" (6) "the mental health of the accused;" (7) "the length of the interrogation;" (8) "the location of the interrogation;" (9) "the continuity of the interrogation;" (10) "the repeated or prolonged nature of the interrogation;" (11) "the use of physical punishment, including both physical brutality as well as the deprivation of food or sleep;" (12) "whether law enforcement offered specific promises of leniency, rather than general remarks that a cooperative attitude would be to the accused's benefit; and" (13) "whether law enforcement made deliberate misrepresentations of the evidence against the accused." *Miller I*, 441 S.C. at 120-21, 893 S.E.2d at 314. "None of these factors are dispositive in and of themselves; rather, they must be considered in their totality to determine whether the defendant's will was overborne." *Id.* at 122, 893 S.E.2d at 314. "Ultimately, the determination will depend 'upon a weighing of the circumstances of pressure against the power of resistance of the person confessing.'" *Id.* at 120, 893 S.E.2d at 314 (quoting *Dickerson v. United States*, 530 U.S. 428, 434 (2000)).

Additionally, the trial court may consider "the crucial element of police coercion." *State v. Parker*, 381 S.C. 68, 86, 671 S.E.2d 619, 628 (Ct. App. 2008) (quoting *Withrow v. Williams*, 507 U.S. 680, 693 (1993)). "[C]onvictions following the admission into evidence of confessions which are involuntary, i.e., the product of coercion, either physical or psychological, cannot stand." *State v. Collins* (*Collins II*), 435 S.C. 31, 44, 864 S.E.2d 914, 921 (Ct. App. 2021) (alteration in original) (quoting *Rogers v. Richmond*, 365 U.S. 534, 540 (1961)), *aff'd as modified*, 442

S.C. 444, 900 S.E.2d 426. "A statement may not be 'extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] obtained by the exertion of improper influence.'" *State v. Miller* (*Miller II*), 375 S.C. 370, 386, 652 S.E.2d 444, 452 (Ct. App. 2007) (alterations in original) (quoting *State v. Rochester*, 301 S.C. 196, 200, 391 S.E.2d 244, 246 (1990)).

"Coercive police activity is a necessary predicate to finding a statement is not voluntary." *Id.* "Absent coercive police conduct causally related to a confession, there is no basis for finding a confession constitutionally involuntary." *State v. Hughes*, 336 S.C. 585, 594, 521 S.E.2d 500, 505 (1999). However, "[f]ew criminals feel impelled to confess to the police purely of their own accord without any questioning at all. . . . Thus, it can almost always be said that the interrogation caused the confession." *State v. Johnson* (*Johnson IV*), 422 S.C. 439, 457, 812 S.E.2d 739, 748 (Ct. App. 2018) (omission in original) (quoting *State v. Von Dohlen*, 322 S.C. 234, 244, 471 S.E.2d 689, 695 (1996), *overruled on other grounds by State v. Burdette*, 427 S.C. 490, 832 S.E.2d 575 (2019)). "Although police tactics may influence the suspect's decision to confess, as long as the decision results from the suspect's balancing of competing interests, the confession is voluntary." *State v. Register*, 323 S.C. 471, 479, 476 S.E.2d 153, 158 (1996). "[P]olice may use some psychological tactics in eliciting a statement from a suspect. . . . These ploys may play a part in the suspect's decision to confess, but so long as that decision is a product of the suspect's own balancing of competing considerations, the confession is voluntary." *Collins I*, 442 S.C. at 456, 900 S.E.2d at 432 (quoting *Parker*, 381 S.C. at 89, 671 S.E.2d at 630); *see also Johnson IV*, 422 S.C. at 457, 812 S.E.2d at 749 (explaining statements that a defendant's daughter "would think he was a cold-blooded killer who only survived because [he] ran out of bullets" did not amount to a "tangible threat related to children or family members," which would render a confession involuntary, because those statements were "more akin to a psychological tactic than actual coercion").

Johnson contends his statement was involuntary because during the interrogation, law enforcement told him he could not have cigarettes unless he cooperated, despite his assertion he was severely addicted, and he would never see his daughter again. He asserts the interrogation spanned five hours, lasting from 9 p.m. to 2 a.m. He contends that as a result, he was exhausted as demonstrated by him putting his head down on the table. He also asserts he had limited experience with the criminal justice system, which he contends the officers knew based on comments they made to him. Johnson argues his will was overborne due to these factors.

The victim died after he was shot while at an apartment complex in Charleston. During Johnson's interrogation, he initially stated he was in Orangeburg at the time of the shooting. Eventually, he admitted he was at the apartment complex at that time, but he did not confess to any involvement in the shooting. Ultimately, Johnson insisted he saw someone he did not know shoot the victim; he explained neither he nor the passenger in his car shot the victim. Only after law enforcement left the room and let him have phone conversations with both his mother and girlfriend totaling about thirty minutes[3] did he admit he was at the apartment complex. At the conclusion of the suppression hearing, the trial court determined law enforcement did not coerce Johnson into making a statement. The court found any coercion arose solely because of the people he spoke with during the phone calls.

Johnson's interrogation took place at the Charleston Police Department Headquarters in an interview room. Johnson was in the room for a total of five hours, but he was not actively interrogated for that whole period. Officers offered Johnson bathroom breaks and water many times throughout the interrogation and provided both whenever he asked. The interrogation also stopped for Johnson's phone conversations, during most of which time he was alone in the room. Officers left Johnson alone in the room for short periods of time on several other occasions. The interrogation ended after Johnson had been in the room for about four and a half hours. Johnson was mostly alone for the last thirty minutes he was in the room awaiting transportation, to the county jail. It was during this last thirty minutes when he is alone in the room that he puts his head on the table a few times as he notes in support of his contention that he was exhausted.

David Osborne, a detective with the police department at the time of Johnson's interrogation, conducted most of the interrogation, and another detective participated with Osborne at times. Osborne alone interrogated Johnson for the last half of the interrogation. Johnson was only handcuffed and shackled at the beginning of his time in the interview room, for about twelve minutes. He spent most of the interrogation without restraints. *See Miller I*, 441 S.C. at 124, 893 S.E.2d at 315 ("During the interview, [the defendant] was not handcuffed and, at that time, had not been charged with any crimes. Likewise, throughout the overwhelming majority of the questioning, [the defendant] was in the room with only one law enforcement officer at a time."); *Dye*, 384 S.C. at 49, 681 S.E.2d at

---

[3] Officers had already allowed Johnson to speak to his girlfriend for about ten minutes earlier in the interrogation.

27 (finding the circumstances surrounding a defendant's confession did "not indicate his statements were induced by an oppressive environment," recognizing among other conditions, when the defendant confessed, "he was not in a police-dominated atmosphere" as only one officer was present in the room).

Johnson cites two cases from other jurisdictions in support of his argument his statement was not voluntary because he was not allowed cigarettes. In those cases, the court, in finding a statement voluntary, observed a defendant was allowed to smoke cigarettes among consideration of other factors. In *Collins II*, this court, while summarizing what occurred during a defendant's interrogation, provided that law enforcement had allowed the defendant to smoke a cigarette a few times but also denied him a cigarette once. 435 S.C. at 39-40, 864 S.E.2d at 918. Ultimately, this court determined that under the totality of the circumstances, the defendant's statement was involuntary because law enforcement had made false promises to him including that his statement would be confidential and he would be able to return home no matter what he told law enforcement. *Id.* at 53-54, 864 S.E.2d at 925-26. This court's decision did not turn on the defendant's access to cigarettes. Our supreme court affirmed this court's decision as modified and found it did not need to consider the totality of the circumstances and did not mention the defendant's access to cigarettes. *Collins I*, 442 S.C. at 460, 900 S.E.2d at 434 (modifying this court's "decision slightly to clarify that a false statement of confidentiality can be conclusive on the issue of voluntariness, regardless of the existence or negation of *Miranda* warnings (or the need to examine the totality of the circumstances)"). Simply because courts have noted the fact that a defendant was given cigarettes among other factors it considered in finding a statement voluntary does not mean when a defendant is deprived of cigarettes, a statement is involuntary. Even if a court were to find in some circumstances the withholding of cigarettes to be relevant to the matter of voluntariness, any consideration of that fact would be along with all other relevant factors.

In this case, Osborne testified Johnson "was kind of smiling when he would ask [for a cigarette]. He might follow it up with something like, you know, come on, man, give me a cigarette, but it wasn't anything like he was desperate. I mean he was smiling when he was asking it." The video recording supports Osborne's testimony that some of Johnson's requests for cigarettes were said in a lighthearted manner and in our view, does not show a person in distress from being denied a cigarette. Osborne testified that none of the times when he denied Johnson a cigarette did he immediately change his story and confess to murder. Osborne also testified that after he brought up Johnson's daughter, Johnson did not immediately confess to murder or change his story drastically then either. Based on our review

of the recording, we agree with these contentions by Osborne. Further, the recording shows that although Johnson did appear somewhat emotional when his daughter's growing up without him was discussed, at other times he was smiling and laughing. *See id.* at 126, 893 S.E.2d at 317 ("It would be somewhat unusual to find a suspect was coerced into confessing while simultaneously laughing and joking with the law enforcement agents who were overbearing his free will.").

Johnson was twenty-seven years old at the time of the interview. Officers advised Johnson of his *Miranda*[4] rights, and he said he understood them. Osborne testified Johnson signed the back of the card that explained the rights, which Osborne provided stated "he understands and wishes to waive his rights." Johnson argues he had limited experience with law enforcement and points to comments Osborne made during the interrogation to show that he was aware of that fact. Osborne commented during the interrogation that Johnson's only legal experience was with child support proceedings and possession charges and Johnson does not provide otherwise. The record contains no other specific evidence of Johnson's criminal history or experience with law enforcement.

Osborne testified that throughout the time he spent with Johnson, he did not notice any sign of mental defect, physical defect, or intoxication. Osborne indicated Johnson seemed to understand what the detective was saying and Osborne had no problems understanding Johnson. Osborne also provided Johnson appeared to be of reasonable intelligence for his age. The trial court found Johnson showed "cognitive skills and awareness in the telephone conversation[s]" he had with his mother and girlfriend. The trial court found Johnson was "pretty sharp and aware" and had "an awareness . . . of knowing exactly what he was doing." *See Miller I*, 441 S.C. at 125-26, 893 S.E.2d at 316 (recognizing that even though a defendant's education was limited, when "the trial court made a factual finding that [the defendant] was 'pretty street smart,'" citing to the defendant's multiple attempts to convince law enforcement he had an alibi and his prior juvenile criminal history, "[t]the factual findings regarding [the defendant] being 'street smart' [we]re supported by 'any evidence' and, therefore, must be upheld under [the] standard of review" and with these street smarts in mind, finding [the defendant's] education and experiences weighed in favor of a finding of voluntariness). From our review of the video recording of the interrogation, Johnson appears to understand the officers and their questions. Johnson does not allege that he did not have the mental capacity to understand. *See Dye*, 384 S.C. at 49, 681 S.E.2d at 27 (finding a defendant's "lack of education did not hinder his ability to comprehend his rights

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

in light of the attendant circumstances" based on the officer's testimony regarding the defendant's "understanding of his rights and willingness to waive them").

Based on our review of the video of the interrogation, Johnson did not change his story after either the denial of cigarettes or the comments about his daughter, and instead only changed his story once he spoke on the phone to his mother and his girlfriend. Johnson appeared to have weighed his options and decided to change his story to tell police he was present at the crime. He did not appear to be coerced. *See Register*, 323 S.C. at 479, 476 S.E.2d at 158 ("Although police tactics may influence the suspect's decision to confess, as long as the decision results from the suspect's balancing of competing interests, the confession is voluntary."). Based on our observations, specifically Johnson's demeanor during these calls and comments to law enforcement during the calls and immediately after, as well as Osborne's testimony, we find Johnson's phone conversations influenced him to make a statement admitting he was at the scene of the shooting. *See Miller II*, 375 S.C. at 386, 652 S.E.2d at 452 ("Coercive police activity is a necessary predicate to finding a statement is not voluntary."); *see also Colorado v. Connelly*, 479 U.S. 157, 176 (1986) (Brennan, J., dissenting) ("Confessions . . . by persons coerced by parties other than police officers are now considered 'voluntary.'"). Accordingly, we find under the totality of the circumstances, the State proved by a preponderance of the evidence Johnson voluntarily made his statement. Therefore, we affirm the trial court's denial of Johnson's motion to suppress his statement to law enforcement.

2. The trial court's decision to dismiss a juror and replace him with an alternate juror midtrial did not prejudice Johnson and thus does not warrant reversing his conviction. "A decision on whether to dismiss a juror and replace [the juror] with an alternate is within the sound discretion of the trial court[] and . . . will not be reversed on appeal absent an abuse of discretion." *State v. Bell*, 374 S.C. 136, 147, 646 S.E.2d 888, 894 (Ct. App. 2007). "An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law." *State v. Pagan*, 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006).

"The trial court has the solemn duty to ensure 'that every juror is unbiased, fair[,] and impartial.'" *State v. Rowell*, 444 S.C. 109, 113, 906 S.E.2d 554, 556 (2024) (quoting *State v. Gulledge*, 277 S.C. 368, 370, 287 S.E.2d 488, 489 (1982), *overruled on other grounds by Rowell*, 444 S.C. at 116, 906 S.E.2d at 557). "By allowing parties to reject a certain number of jurors who cannot be challenged for cause, the peremptory strike right enhances the fairness of the trial process, which in turn elevates public confidence in our justice system." *Id.* at 114, 906 S.E.2d at

556. "Should jurors give false or misleading answers during voir dire, the parties may mistakenly seat a juror who could have been excused by the court, challenged for cause by counsel, or stricken through the exercise of a peremptory challenge." *State v. Coaxum*, 410 S.C. 320, 327, 764 S.E.2d 242, 245 (2014), *overruled on other grounds by Rowell*, 444 S.C. at 116, 906 S.E.2d at 557. "Where a party claims a juror has withheld material information in response to a *voir dire* question, the trial court must determine, preferably after a hearing, whether the juror's withholding suggests bias." *Rowell*, 444 S.C. at 115, 906 S.E.2d at 557.

During trial, the State raised a concern a juror might have fallen asleep during testimony, and the trial court stated it had noticed the same. The trial court stated it would wait until the end of the trial to determine how the parties wanted to address it. Later in the trial, while testimony on behalf on the State was still ongoing, that same juror informed the court he knew a witness who had already testified. During voir dire, the juror had not responded when the trial court read a list of names and asked prospective jurors to indicate if they were related to or socially or casually acquainted with any of those people. When the trial court informed the parties of the juror's disclosure, it provided the juror stated he "just didn't recognize her." The State asserted it would have used a peremptory strike on the juror if it had known of the relationship during voir dire, even though the juror indicated the relationship would not influence him. The State provided that it generally did not seat jurors who knew a witness. While Johnson argued the State initially indicated off the record it would not have used a peremptory challenge on the juror, the State later stated on the record it would have used a peremptory challenge if it had learned of the relationship during voir dire.[5] The trial court removed the juror and replaced him with an alternate juror. After the conclusion of testimony, the trial court made further statements about the removal of the juror, describing how the juror's sleeping impacted the court's decision to remove that juror. The court explained that if the juror was asleep while the witness he knew testified, the juror might have relied on his prior relationship to decide what weight to give that witness's testimony during deliberations, instead of his observations of that witness during her testimony. The court noted it found that witness's demeanor unusual.

"We grant 'broad deference' to the trial [court's] credibility conclusions in claims of jury misconduct." *State v. Tucker*, 423 S.C. 403, 415, 815 S.E.2d 467, 473 (Ct. App. 2018) (quoting *State v. Harris*, 340 S.C. 59, 63, 530 S.E.2d 626, 628 (2000)). "Leaving credibility determinations in jury misconduct claims to trial [courts]

---

[5] During jury selection, the State had used only one peremptory challenge.

means respecting their decision that they have enough evidence to weigh it at all
. . . ." *Id.* at 414, 815 S.E.2d at 472-73.

Recently, the supreme court simplified a trial court's determination in deciding
what action to take when a juror has failed to disclose information during voir dire.
*See Rowell*, 444 S.C. at 115-16, 906 S.E.2d at 557 ("[W]hen a juror untruthfully
answers or fails to answer a material *voir dire* question, the juror's bias may not be
presumed, and a new trial may be ordered only when prejudice is proven by
showing the concealed information reveals a potential for bias *and* would have
made an objectively material difference in the moving party's use of a peremptory
strike or resulted in a successful challenge for cause."). Whether the juror
concealed information intentionally or unintentionally no longer matters. *See id.* at
116, 906 S.E.2d at 557 (overruling "the 'intentional versus unintentional'
framework erected by the line of cases that began with . . . *Gulledge* and includes
*Coaxum*" (citation omitted)).[6]

In *Coaxum*, our supreme court acknowledged that because a juror's failure to
disclose had been unintentional, "the trial court likely would have been justified in
refusing to excuse [the j]uror." 410 S.C. at 330, 764 S.E.2d at 247. However, the
supreme court ultimately determined the trial court had not abused its discretion in
removing the juror because the trial court had conducted a "thorough inquiry" into
the State's "strategy in seating or striking prospective jurors." *Id.* The supreme
court explained that when "a juror's nondisclosure is unintentional, the trial court
*may exercise its discretion* in determining whether to proceed with the trial with
the jury as is, replace the juror with an alternate, *or* declare a mistrial." *Id.* at 328,
764 S.E.2d at 246 (emphasis added). The supreme court noted, "[T]he trial [court]
should exhaust other methods to cure possible prejudice before aborting a trial."
*Id*. at 327, 764 S.E.2d at 245 (quoting *State v. Kelly*, 331 S.C. 132, 142, 502 S.E.2d
99, 104 (1998)).

Even assuming the trial court abused its discretion in removing the juror in the
present case, to warrant a reversal of Johnson's conviction, he must show the trial
court's decision to remove the juror and replace the juror with the alternate juror
prejudiced him. *See State v. Rogers*, 263 S.C. 373, 382, 210 S.E.2d 604, 609
(1974) ("[T]he general principle that error must be prejudicial in order to be ground
for reversal applies to rulings on excusing a juror."); *id.* at 381, 210 S.E.2d at 608

---

[6] We make no finding as to whether the test set out by *Rowell* or the previous test
would apply in the present case. Our ultimate holding on this issue is the same
under either.

(providing the trial court's discretion in "excusing jurors . . . will not be interfered with unless it is clearly shown to have been abused *to the actual prejudice of the complaining party*" (emphasis added) (quoting 50 C.J.S. *Juries* § 205)). Johnson asserts the supreme court erred in *Coaxum* by requiring a defendant to show prejudice to receive a new trial when a juror is removed against the defendant's wishes. *See Coaxum*, 410 S.C. at 325-26, 331, 764 S.E.2d at 244, 247 (finding when the trial court removed a juror at the State's request after an unintentional nondisclosure, the defendant had to "show a *prejudicial* abuse of discretion" to receive a new trial (emphasis added)). We are bound by the supreme court's holding in *Coaxum*. *See State v. Phillips*, 416 S.C. 184, 194, 785 S.E.2d 448, 453 (2016) ("[I]t is incumbent upon the court of appeals to apply th[e supreme c]ourt's precedent."). While *Rowell* overruled *Coaxum* as explained above to eliminate any distinction by the trial court between intentional and nonintentional nondisclosure, in *Rowell* the defendant did not learn of a juror's nondisclosure until after the jury found him guilty. *Rowell*, 444 S.C. at 112, 906 S.E.2d at 555. The defendant moved for a new trial, which the trial court denied. *Id.* The supreme court remanded the case to the trial court for a hearing on the nondisclosure. *Id.* at 117, 906 S.E.2d at 558. *Rowell* explained that when a juror has not disclosed information during voir dire, "a new trial may be ordered only when prejudice is proven by showing the concealed information reveals a potential for bias *and* would have made an objectively material difference in the moving party's use of a peremptory strike or resulted in a successful challenge for cause." *Id.* at 115-16, 906 S.E.2d at 557. Accordingly, *Rowell* did not alter *Coaxum*'s holding that on appeal, to warrant reversal, the appellant must show the trial court's removal of a juror prejudiced the appellant. Here, at the time of removal, Johnson wished to proceed without removing the juror and the State wanted the juror removed. At no point during trial, including following the removal, did either side argue for a new trial. On appeal, Johnson seeks a new trial as the remedy for the error he alleges the trial court made in removing the juror. *Rowell* does not impact the "fundamental principle of appellate procedure . . . that a challenged decision must be both erroneous and prejudicial to warrant reversal." *In re Care & Treatment of Gonzalez*, 409 S.C. 621, 636, 763 S.E.2d 210, 217 (2014); *see also State v. Locklair*, 341 S.C. 352, 365, 535 S.E.2d 420, 427 (2000) ("Error without prejudice does not warrant reversal." (quoting *State v. McWee*, 322 S.C. 387, 393, 472 S.E.2d 235, 239 (1996)); *State v. Patterson*, 367 S.C. 219, 224, 625 S.E.2d 239, 242 (Ct. App. 2006) ("In order for an error to warrant reversal, the error must result in prejudice to the appellant.").

Johnson maintains instead of relying on *Coaxum*, this court should rely on the supreme court's earlier decision in *State v. Stone* instead. *See State v. Stone*, 350

S.C. 442, 448-49, 567 S.E.2d 244, 247-48 (2002) (finding the trial court abused its discretion by removing a juror who failed to disclose she knew a witness who testified during the sentencing phase of a death penalty trial when the "scant acquaintance would neither have supported a challenge for cause nor" affected the State's exercise of its peremptory challenges). In *Stone*, a defendant convicted of murder and other offenses and sentenced to death argued on appeal the trial court had committed errors at both the guilt and sentencing phase. *Id.* at 444-52, 567 S.E.2d at 245-49. The supreme court affirmed his convictions but reversed the death penalty sentence and remanded for a new sentencing proceeding. *Id.* at 444, 567 S.E.2d at 245. As to the defendant's allegations of error arising out of the guilt phase of the trial, the supreme court found the trial court had not erred. *Id.* at 445-47, 452, 567 S.E.2d at 246-47, 249. However, the supreme court found the trial court committed multiple errors during the sentencing phase. *Id.* at 448-52, 567 S.E.2d at 247-49. As to the error in removing the juror, the supreme court found the trial court had abused its discretion but did not state the error warranted reversal. *Id.* at 448-49, 567 S.E.2d at 247-48. However, in regards to the remaining errors at the sentencing stage, the supreme court found those errors, which all pertained to jury instructions, required reversal. *Id.* at 449-52, 567 S.E.2d at 248-49. Accordingly, we do not read *Stone* as requiring a new trial without first considering prejudice, even when a trial court abuses its discretion in removing a juror.

In this case, Johnson made no allegation the alternate juror who replaced the removed juror was not qualified or was treated differently from the other jurors. *See* S.C. Code Ann. § 14-7-1340 (2017) (providing "alternate jurors . . . shall have the same opportunities for seeing and hearing the proceedings[,] . . . take the same oath as the jurors already sworn[,] and . . . attend at all times the trial"); S.C. Code Ann. § 14-7-320 (2017) (stating alternate "jurors must be drawn from the same source, in the same manner, have the same qualifications, and be subject to the same examination and challenge as the jurors already sworn"). Accordingly, Johnson has not shown any prejudice from the removal of the juror and replacement with an alternate. *See Coaxum*, 410 S.C. at 331, 764 S.E.2d at 247 (finding because the jury was indisputably impartial after the juror's removal, the defendant did not meet his burden for receiving a new trial); *State v. Williams*, 321 S.C. 455, 460, 469 S.E.2d 49, 52 (1996) (affirming the seating of an alternate juror because the supreme court "discern[ed] no prejudice to [the defendant] from the seating of the alternate juror"); *State v. McDaniel*, 275 S.C. 222, 223-24, 268 S.E.2d 585, 586 (1980) (affirming the trial court's replacing a juror with an alternate juror approved by both sides at the start of trial when the defendant did not withdraw that approval or move for a mistrial, holding the defendant made no

showing as to how the seating of the alternate prejudiced him); *see also Palacio v. State*, 333 S.C. 506, 517, 511 S.E.2d 62, 68 (1999) ("[A] criminal defendant has no right to a trial by any particular jury, but only a right to a trial by a competent and impartial jury."); *State v. Evins*, 373 S.C. 404, 416, 645 S.E.2d 904, 910 (2007) ("[T]he right to serve on a jury. . . belongs to the potential juror, not a litigant."). Therefore, we affirm the trial court's removal of the juror and replacement with an alternate juror.

**AFFIRMED.**

**WILLIAMS, C.J., and KONDUROS and VINSON, JJ., concur.**